JOHN P. COOMBS vs. FITCHBURG RAILROAD COMPANY.

Suffolk.   November 16, 17, 1891. — May 6, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Personal Injuries — Risk of Employment — Due Care.*

A railroad brakeman, knowing that to turn a switch was incident to his employ-
ment, knowing its location and the manner of operating it, and knowing also
the manner of making a flying switch, undertook, while aware that the cars
were approaching, to turn the switch, and, before he could get out of the way,
he was struck and injured. *Held*, that he could not maintain an action against
the railroad company for the injuries.

ACTION of tort for personal injuries occasioned to the plaintiff
while in the defendant's employ.   At the trial in the Superior
Court, before *Aldrich*, J., the jury returned a verdict for the
plaintiff; and the defendant alleged exceptions, the material
parts of which appear in the opinion.

*G. A. Torrey*, for the defendant.

*J. D. Long & A. E. Avery*, for the plaintiff.

MORTON, J.   The defendant is a railroad corporation, and the
place where the accident occurred was at a switch in its freight-
yard in Boston.   From the nature of its business it requires
numerous and extensive tracks, which are connected with one
another, and which are operated at the places of junction by
switches.   In making up its trains and transacting its business,
cars are constantly shifted from one track to another in its
freight-yard.   This is done by an engine called a switcher.   In
December, 1886, the plaintiff entered the defendant's employ-
ment as a brakeman on the switcher; meaning, we presume, as
one of the gang operating with the switcher.   He continued in
this employment till the day of the accident, which was July
22, 1887.   On that day, the plaintiff, with the conductor of the
switching gang, and two or three other brakemen, went to get
six loaded cars from a place called Squire's yard.   The con-
ductor told the plaintiff that they were going to make a run
with some of the cars, and to get the switch ready.   Making a
run is the same thing as making a flying switch, and is a usual
operation in all freight-yards.   The plaintiff was familiar with

the operation, as it was performed almost every day in the defendant's freight-yard where he was working, and he had performed it often himself. The switch was placed against an abutment of the bridge of the Boston and Lowell Railroad that crossed the defendant's road at this point, and was as far from the track as the abutment and location of the defendant's road would admit, and was what was known as a Tyler switch, — a kind in common use and specified by statute. It turned hard, but otherwise was in good order. Neither the track nor the switch was broken, and both were, as the plaintiff said, all right. The plaintiff had turned the switch a number of times before, but never, as he testified, for a flying switch. There was a switchman attached to the gang; but when for any reason he could not turn a switch, one of the brakemen did it. The handle of the switch turned from the abutment out towards the rail, and in order to turn it one had to stand between it and the track, and close to the track. The plaintiff went to the switch, and after the engine had passed undertook, in the interval which separated the engine from the cars, to turn the switch for the purpose of directing the cars on to another track. While in the act of turning it, and standing between the switch and the rail, he was struck by the cars and received the injuries for which he sues. He claims that the switch was in a dangerous place, that it was too near the track, that he was ignorant of the danger of using it to make a flying switch, and that the defendant was negligent in not calling his attention to it.

But it is apparent that the situation and location of the switch were familiar to him. There was nothing misleading, or in the nature of a trap, about the switch or the place where it was. He does not say that he did not know its distance from the track, or that it stood hard up against the abutment. He had turned it before, and therefore knew how it was operated. It was incident to his employment that he should be called on to turn switches. He knew what a run or flying switch was, for it was made almost every day in the yard, and he had made a great many of them himself. He knew that the cars were approaching at an interval behind the engine, and that he was to turn the switch in that interval. If any importance is to be attached to the overhang of the cars, he certainly knew as much about

that as any one.   Knowing that to turn the switch was incident to his employment, knowing its location, knowing the manner of operating it, knowing the manner of making a flying switch, and knowing that the cars were approaching, he undertook to turn the switch, and before he could get out of the way was struck and injured.   His own explanation would seem to be that those on the cars did not hold them back enough to give him an opportunity to turn the switch and get out of the way. We think it is plain that the injury was due to obvious risks connected with his employment, which he must be held to have understood and assumed.   It does not avail him to say, with all it implies, that he never had made a flying switch at this place. He had used the switch before, and knew about the operation of making a flying switch, and it was incident to his employment that he might be called on to make one at any time or place in the yard.   He says the switch could have been made safer by moving it a short distance.   Perhaps it might.   But he assumed the risks that were obvious and incident to his employment with the tracks and switches located as they were, and cannot now say they might have been made safer.   *Ladd* v. *New Bedford Railroad*, 119 Mass. 412.   *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79.   *Yeaton* v. *Boston & Lowell Railroad*, 135 Mass. 418.   *Wood* v. *Locke*, 147 Mass. 604.   *Lothrop* v. *Fitchburg Railroad*, 150 Mass. 423.   *Lewis* v. *New York & New England Railroad*, 153 Mass. 73.   *Sweeney* v. *Berlin & Jones Envelope Co.* 101 N. Y. 520.   *Appel* v. *Buffalo, New York, & Philadelphia Railway*, 111 N. Y. 550.   *Hayden* v. *Smithville Manuf. Co.* 29 Conn. 548.   *Randall* v. *Baltimore & Ohio Railroad*, 109 U. S. 478.   *Tuttle* v. *Detroit, Grand Haven, & Milwaukee Railway*, 122 U. S. 189.

We cite only a few of the numerous cases bearing on the question, both in this State and elsewhere.   For these reasons, we think the entry must be,

*Exceptions   sustained.*