## JOHN L. MURCH *vs.* THOMAS WILSON'S SONS AND COMPANY.

Suffolk.    March 10, 1897. — May 21, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Obvious Risk.*

At the trial of an action for personal injuries, it appeared that the plaintiff was employed to pilot the defendant's steamship from Boston to Gay Head; that at about midnight on the first day out, the weather being cold and stormy and the plaintiff having occupied for a long time an exposed situation on the bridge of the vessel, was invited by one of the ship's officers to go into the chart room, just behind the bridge, for warmth and shelter; that the room, which was small, contained two portholes and two small ventilators, and a door opening on the deck so arranged as to be fastened open; that it was heated by a stove which was not provided with a smoke pipe to the outer air, and in which a patent fuel was burned; that when he first went to the chart room one of the officers of the vessel cautioned him to keep the door hasped back and there would be no danger from the fumes of the stove; that, although he on coming aboard the vessel had had a state room assigned to him, he used it but once, and from time to time, while navigating the vessel, went into the chart room, but always kept the door open; and that while so occupying the chart room on the second day out he fell asleep on a lounge, and rolled from it to the floor and against the stove, in consequence of which he was severely burned and rendered unconscious for a long time from the fumes of the stove. *Held*, that the defendant owed the plaintiff no duty to change the construction of its chart room or of the stove by which it was heated; that the plaintiff assumed the risk of the accident; and that the action could not be maintained.

TORT, for personal injuries sustained by the plaintiff while in the employ of the defendant, from asphyxiation and burning on board the defendant's steamship on February 20, 1893.

Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff, who was a coast pilot, had been employed by the defendant to pilot its steamship, the Persian Monarch, from Boston to Gay Head, and on the morning of February 19, 1893, he went aboard the steamship for that purpose. Before he assumed charge of the navigation of the vessel a first class state room in the passenger cabin on the main deck was assigned to him by the chief steward, in which he deposited his bag of clothes. The plaintiff assumed charge of the navigation of the vessel at

about eight o'clock in the morning, taking his station for that purpose on the bridge which was situated on the upper deck just forward of the mainmast. At about three o'clock in the afternoon of the same day the vessel encountered snow squalls and mist, and the plaintiff at that time went to his state room and put on the sea clothes which he had left there. At about midnight the third officer went to him on the bridge and informed him that the vessel had a chart room or deck house where he could sit and get warm, and, telling him that he would be called when wanted, took him to the chart room which they both entered. The chart room was situated amidships on the same deck as the bridge, and a few feet aft of it. It was about six feet square, and between six and seven feet in height, and had a door opening outwardly which could be held open four or five inches by a hasp. The room, among other furniture and fixtures, contained a cushioned seat on either side, and a stove in the centre, fastened to the floor. It was lighted by two portholes, and had two ventilators about three inches in diameter placed in the door and ceiling respectively, and capable of being opened from the inside. The stove burned some kind of patent fuel, but had no smoke pipe leading to the outer air. The plaintiff resorted to this chart room on several occasions, and about noon on Monday he again went into it, laid down on one of the seats, fell asleep, and while asleep fell from his couch against the stove, in consequence of which he was severely burned about the body and rendered unconscious by the fumes from the stove. About an hour later he was found unconscious in a kneeling posture over the stove, with his side pressed against it, his arm resting on and partly around it, and his hand thrust into the opening of the stove.

The plaintiff testified that soon after he went into the chart room for the first time, the first mate also entered, and tried to open the dead-lights, but could not do so because they were frozen; that he then said, " Pilot, we are burning a patent fuel here, an American fuel, we do not know what it is, whether there is any danger in it or not, but keep that door hasped back, and there will be no danger "; that the mate then went out leaving the door hasped open; and that the plaintiff at no time noticed any fumes from the stove, and that he always kept the door hasped

open. He further testified that when he went into the chart room on Monday noon he had to unhook the door, and after entering hasped it partly open as he had found it; that while he was lying down the captain came to get his glasses, and when the plaintiff started up he said, "Pilot, lie still, lie still"; that the fire was then very low, but when he was almost asleep the third mate came in, and ordered one of the crew, who was with him to get some fuel and fill up the stove; that he knew nothing more until after the accident, and that when he went to sleep the door was hooked open, and he did not know that any one closed it. This was all the material evidence in the case.

At the close of the plaintiff's case, the judge, at the defendant's request, ruled that the action could not be maintained, and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*R. D. Weston-Smith & C. Walcott,* for the plaintiff.

*A. H. Russell,* (*C. T. Russell* with him,) for the defendant.

KNOWLTON, J. The chart room and the stove by which it was heated were a part of the permanent construction and arrangement of the steamship, and in all their details they were open to the observation of everybody who came upon that part of the ship. Such danger as there was from the use of them to one who engaged to act as pilot was an obvious risk of the business, which was covered by his contract to serve on that ship. Parties entering into a contract for service by one of them make their engagements in reference to the subject matter to which the contract relates, and their rights and liabilities depend upon the contract as applied to the subject with which they are dealing. The employee impliedly agrees to assume all the obvious risks of the business in which he contracts to work. Among these are the open, manifest dangers attendant upon the use of the ways, works, and machinery of a permanent character that are plainly intended to be retained as a part of the plant to which the contract for service relates. It has often been held that an employer owes his employee no duty to change a business in these particulars in order to make it safer, even though in some parts his ways and works would not be deemed reasonably safe and proper if he were starting a new establishment to do the same kind of work under an arrangement with employees to serve in

a business afterwards to be established. *Ladd* v. *New Bedford Railroad,* 119 Mass. 412. *Lovejoy* v. *Boston & Lowell Railroad,* 125 Mass. 79. *Coombs* v. *Fitchburg Railroad,* 156 Mass. 200. *O'Maley* v. *South Boston Gas Light Co.* 158 Mass. 135. *Fisk* v. *Fitchburg Railroad,* 158 Mass. 238. *Goodridge* v. *Washington Mills,* 160 Mass. 234. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153. *Feely* v. *Pearson Cordage Co.* 161 Mass. 426. *Goodes* v. *Boston & Albany Railroad,* 162 Mass. 287. *Austin* v. *Boston & Maine Railroad,* 164 Mass. 282. *Content* v. *New York, New Haven, & Hartford Railroad,* 165 Mass. 267. *Sweeney* v. *Berlin & Jones Envelope Co.* 101 N. Y. 520. *Appel* v. *Buffalo, New York, & Philadelphia Railway,* 111 N. Y. 550. *Hayden* v. *Smithville Manuf. Co.* 29 Conn. 548. *Tuttle* v. *Detroit, Grand Haven, & Milwaukee Railway,* 122 U. S. 189. So far as risks are obvious pertaining to the apparently permanent features of the business as it is openly conducted, an employer has a right to believe that his employee agrees to assume them. They are, therefore, not included among those to be guarded against in the performance of his general duty to furnish reasonably safe appointments for the employee, and the employer cannot be held guilty of negligence in failing to make provision against them.

In the present case any one opening the door of the chart room would see at a glance that the products of combustion in the stove could not escape except into the atmosphere of the room. The plaintiff was furnished with a state room, and the chart room was not designed to be used as a sleeping room. Moreover, he was warned that a kind of fuel was used in the stove which might be dangerous, and that it was necessary for safety to keep the door open a little way by the hook which was designed to hold it in that position. However much we may sympathize with the plaintiff in his misfortune, a majority of the court are of opinion that the defendant owed him no duty to change the construction of its chart room, or of the stove by which the room was heated, and that when he entered the service he voluntarily assumed the risk of such an accident as befell him.

It is not contended that there can be a recovery for the negligence of a fellow servant in closing the door, instead of fastening it a little way open by the hook.      *Exceptions overruled.*