## ALEXANDER DAVIS *vs.* WILLIAM H. FORBES.

Suffolk. March 9, 10, 1898. — July 14, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Assumption of Risk — Action — Master and Servant.*

A boy, who had had two years' experience in riding colts which were being trained, was injured by the breaking of a stirrup strap on the saddle which he was using when so employed. In an action against his employer for his injury, he testified that, when he went to work, A., the defendant's foreman, handed him a saddle on which the stirrup strap was too short; that he called A.'s attention to this, and A. said, "Here is a pair of old stirrup straps hanging in the case that you will have to use," taking them down and handing one to the plaintiff, who noticed a bad place in it, and told A. that it did not look right; that A. took it out of his hand, got hold of it and pulled it ; that he then put it on the floor and pulled it up, and said it was strong enough to hold him, and that it had got to hold the plaintiff until he got a new one; that the plaintiff believed the strap was strong enough after A. tested it and told him it was strong enough; and that he used it several days, when it broke at the point to which A.'s attention had been called. *Held,* that the plaintiff assumed the risk of using the strap in the condition in which it was; and that the action could not be maintained. KNOWLTON, J. dissenting.
An employer is under no legal obligation to furnish his injured employee with medical attendance.

TORT, for personal injuries occasioned to the plaintiff, while in the employ of the defendant, by the breaking of a strap on a saddle furnished to the plaintiff for use in the course of his employment. The declaration contained two counts, the first charging negligence in furnishing an unsafe and defective saddle for the plaintiff's use, and the second charging neglect to provide medical attendance for the plaintiff. Trial in the Superior Court, before *Gaskill,* J., who allowed a bill of exceptions, in substance as follows.

The judge ruled that the plaintiff could not recover under the second count of the declaration ; and the plaintiff excepted.

The defendant is the owner of an estate at Readville of about eight hundred acres; and one Choate is manager of this estate, and has in his charge about one hundred running horses of blooded stock, and has general charge and supervision of the

raising and training of colts on three separate farms, each farm having a foreman who is responsible to Choate.

On cross-examination, Choate testified that the exclusive charge of the farm where the accident happened, containing about three hundred acres, was delegated to one Abbott; that he had charge of the running race track or course, and of the string of running horses, which, at the time of the accident, consisted of ten horses, and he also had charge and general supervision of fifty brood mares; that he gave the orders to the employees on that farm, and had charge of all the tackle and equipment which was at that stable; that it was the duty of Abbott, if it was the duty of anybody, to furnish a saddle complete for the boys to ride in training and breaking running horses; and that Abbott had the furnishing of everything there to the boys.

There was evidence that in the fall of 1892 and 1893 the plaintiff, who had done no riding of horses before, was employed as an exercise boy or rider by Choate at the farm where the accident happened; that at that time he was hired to ride colts which had been partially broken, and he worked for about six months and was a fair rider; that he was accustomed to notify Abbott if anything was wrong; that after leaving the Forbes farm at the end of that employment he had been employed riding and breaking colts continuously in Baltimore and New York until the time of his re-employment by Abbott, as hereinafter stated; that in all he had been riding and breaking colts for over two years before the happening of the accident; that on September 29, 1895, the plaintiff went to the Forbes farm and applied to Abbott for employment; that Abbott told him that he would see if Choate would hire him; that Choate did so and told him to come to work the next morning; and that the next morning he went into the office to get from Abbott the riding saddle and tackle.

The plaintiff testified that Abbott gave a saddle to the plaintiff, on which the stirrup leather was too short; that he called the attention of Abbott to this, and Abbott said, " Here is a pair of old stirrup straps hanging in the case that you will have to use," taking them down; that he handed the plaintiff one and took one himself, and was putting the stirrup leather on the

iron; that the plaintiff noticed a bad place in the one handed to him; that he told Abbott that that did not look right; that Abbott took it out of his hand, got hold of it and pulled it; that he then put it on the floor and pulled it up, and said it was strong enough to hold him, and that it had got to hold the plaintiff until he got a new one; that the plaintiff believed the straps were strong enough after Abbott tested them, and told him they were strong enough; that the plaintiff thereupon put the saddle on the colt, which he was directed to ride by Abbott; that during the next three days he used the saddle in riding, in accordance with instructions, without accident, with the buckle in the same hole that it was in at the time of the accident; that on the fourth day of his employment, he and the other boys who were riding that day were directed by Abbott to breeze the colts; that this meant to run them at the highest rate of speed; that on the second time around the race course, while he was riding at a rate of speed of an eighth of a mile in about twelve seconds, the stirrup leather above referred to broke, and the plaintiff was thrown under the horse, which kept on going, dragging him for a considerable distance, and causing the injuries complained of; and that the point where the stirrup strap broke was the point to which the plaintiff called the attention of Abbott previously.

Abbott, called as a witness by the defendant, testified that he had been employed by him for five years; that he was foreman of the farm at Readville where the business of breaking colts was conducted; that he knew the plaintiff about four years previously, and was there when he was first in the defendant's employ; that when the plaintiff left there the first time, he was experienced; that the witness was there when the plaintiff returned in September, 1895, and was present at the time of the accident, and saw what happened; that he went to the saddle case and took some stirrup straps off of the pin and held them out to the plaintiff; that the plaintiff took up the stirrup strap which broke, and said, "I will take this strap"; that Abbott looked at the strap and showed him this spot on it; that the plaintiff also said, "That is all right, I will take that strap, it will hold me"; that the plaintiff took the strap and put it on his saddle, and went out riding, and the strap broke; that the plaintiff also said, "I will take this strap, I will risk that it will

hold me "; that at the time of the accident he was pretty close to the plaintiff; that the plaintiff's horse was running up the stretch and swerved to the right, and the plaintiff hit him over the head with a stick two different times, and it knocked the horse back and threw him on to the stirrup that broke, and he fell about the end of the stretch; that he had told the plaintiff not to use the whip under any circumstances; that at that time there were several straps, he should think ten or a dozen; that some of them were good and some of them were bad; that there were two new straps there, and others that were in good condition; that he told the boys to look after the straps, and if there was anything the matter with them to let him know it; that on the morning of the accident he did not know who put on the strap, but he himself did not, but gave the strap to the plaintiff; and that the witness did not regulate their length.

On cross-examination, he testified that he considered that a safe strap to use that morning; that he would not have any hesitation in giving it to the boy to ride, if he showed him the spot in the strap; that it was not necessary for him to use it in that hole; that he did not tell the boys that morning to take all the speed there was out of the horses, but told them to work them as fast as they would go themselves without urging them at all; and that he had full charge of furnishing the tackle that was there to the boys, and he considered he should use safe tackle.

There was a conflict of evidence as to whether or not there were other saddle straps which might have been used, the plaintiff alone testifying that there were no other saddle straps there which were not in use; and as to whether or not the plaintiff could ride with safety by strapping the saddle strap to the clasp in another hole than that at the defective spot at which the strap broke, the plaintiff testifying that it would not have been as safe for him to buckle the strap in any other hole.

On cross-examination, the plaintiff testified as follows:

"*Q.* You could perfectly well have put the tongue in the next hole, could n't you? *A.* No, sir; it was n't my length. —*Q.* Well, you could have done it, could n't you? *A.* No, sir; it is n't safe. —*Q.* You put it right into the hole that was defective and rode it that way? *A.* It was a great deal safer in the defective hole than the other one. —*Q.* You strapped it yourself, did n't you?

*A.* No, sir; Mr. Abbott. — *Q.* But you used it in the hole that was defective, did n't you? *A.* Mr. Abbott put it into the hole."

The judge ruled that, upon all the evidence, the action could not be. maintained, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*P. J. Doherty*, (*E. W. Hamlen* with him,) for the plaintiff.

*J. Lowell*, (*R. E. Forbes* with him,) for the defendant.

MORTON, J.     It is difficult to understand why it was a great deal safer, as the plaintiff testified that it was, to put the buckle in the hole where the strap broke than it was to put it in the hole next to it.     But, assuming that it was as the plaintiff said, we think that the plaintiff took the risk of using the strap as he did in the condition in which it was.     It does not appear what his age was, except that he was a minor.     But he had been riding colts for two years before the accident, and, though a boy, it is fair to assume that he had become experienced in matters pertaining to saddles and riding tackle.     According to his testimony, he noticed a bad place in the strap, and told Abbott that it did not look right.     Then, as he testified, "Abbott took it out of his hand, got hold of it and pulled it; that he then put it on the floor and pulled it up, and said it was strong enough to hold him, and that it had got to hold the plaintiff until he got a new one."     The plaintiff further testified "that he believed the straps were strong enough after Abbott tested them, and told him they were strong enough."     There seems to have been what amounted to a common examination of the straps by the plaintiff and Abbott, and though the plaintiff relied to some extent, as was natural, on Abbott's judgment, he appears to have been satisfied himself from the test that was made in his presence that the strap was suitable for use, as he proposed to use it in the condition in which it was.     No complaint was made that the test was not a reasonable one, and not such as the plaintiff's practical experience commended.     There is nothing to show that Abbott's declaration "that it had got to hold the plaintiff until he got a new one," and "here is a pair of old stirrup straps hanging in the case that you will have to use," coerced the plaintiff into using a strap which he did not think fit, or led him to assume a risk which he would not otherwise have taken.     On

the contrary, he testified, as already observed, "that he believed the straps were strong enough after Abbott tested them, and told him they were strong enough," and evidently used them relying on what his own senses had told him concerning the test to which they were subjected, corroborated as it was by Abbott's statement that they were strong enough. See *Williams* v. *Churchill*, 137 Mass. 243. The fact that the strap afterwards broke under a strain to which it was subjected has of course no tendency to show that the plaintiff was coerced into using it, or did not assume the risk.

The defendant was under no legal obligation to furnish the plaintiff with medical attendance, even if he had been liable for the injury, and the ruling that the plaintiff could not recover under the second count was therefore correct. The case of a seaman injured on shipboard is different.

In the view which we have taken of the case it is unnecessary to consider whether there was any evidence of negligence on the part of the defendant.                    *Exceptions overruled.*

KNOWLTON, J. Because I consider the decision in this case wrong, as an invasion of the province of the jury, and because the opinion seems to me misleading in regard to the principles applicable to cases of this kind, I feel constrained to express my dissent.

The fundamental questions upon which the rights of the parties depend in actions for negligence are whether the defendant was negligent, and whether the plaintiff was in the exercise of due care. In my opinion, the question whether the plaintiff assumed the risk is only important as it bears upon one of these two questions. It does not affect the fundamental propositions on which the law of negligence rests. In its nature it is rather a collateral inquiry, the answer to which often easily decides the case in accordance with these fundamental propositions, without the necessity of considering either of them by itself. I do not remember ever having read or heard any exposition or argument to show that the doctrine of the assumption of the risk by a plaintiff has changed the rule of law, that one who is himself without fault and in the exercise of due care, and who suffers from the negligence of another, may recover the amount of his

damages. The maxim, *Volenti non fit injuria*, is applicable to actions for negligence, as it is to other cases. The doctrine of the assumption of the risk is merely a formal statement of this maxim in its application to concrete cases.

If a plaintiff voluntarily assumes a risk, and afterwards sues for an injury that he has suffered which was within the risk, he cannot recover, because he encounters one or the other of two facts, either of which is fatal to his claim. In such a case it would appear in the last analysis, if the truth were ascertained, either that the plaintiff was negligent, or that the defendant was not negligent.

In every case where the evidence warrants it a defendant has a right to have this test applied. Sometimes each of the fundamental questions in the law of negligence would be difficult to answer upon the evidence, were it not easy to determine that the plaintiff voluntarily assumed the risk. In such a case the defendant prevails without a separate decision of either of the two questions, whether he was negligent, or whether the plaintiff was in the exercise of due care. Such a result, considered in reference to the law of negligence, is a decision that the plaintiff has failed to establish one or the other of the two propositions which must be established in every suit for negligence before there can be a recovery.

The cases to which these principles are applied may be divided into two classes. The first is where the plaintiff, for a valuable consideration, voluntarily assumes the risk by virtue of a contract which expressly or impliedly includes the assumption of it. In ordinary cases, when one contracts to enter a business as employee, he voluntarily agrees, for the wages to be paid him, to assume all the open and obvious risks of the business, including the " manifest dangers attendant upon the use of the ways, works, and machinery of a permanent character that are plainly intended to be retained as a part of the plant to which the contract for service relates." *Murch* v. *Wilson*, 168 Mass. 408.

This may be called a contractual assumption of risk. In regard to the dangers covered by it the employer owes the employee no duty, and he cannot be held guilty of negligence. The rights of the parties depend, not necessarily upon that

which the employee in fact understands and appreciates, but upon that which he ought to understand and appreciate in making such a contract for service, and upon that which the employer has a right to suppose that he understands and appreciates. *Ladd* v. *New Bedford Railroad*, 119 Mass. 412. *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79. *Coombs* v. *Fitchburg Railroad*, 156 Mass. 200. *O'Maley* v. *South Boston Gas Light Co.* 158 Mass. 135. *Fisk* v. *Fitchburg Railroad*, 158 Mass. 238. *Goodridge* v. *Washington Mills*, 160 Mass. 234. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153. *Feely* v. *Pearson Cordage Co.* 161 Mass. 426. *Goodes* v. *Boston & Albany Railroad*, 162 Mass. 287. *Austin* v. *Boston & Maine Railroad*, 164 Mass. 282. *Content* v. *New York, New Haven, & Hartford Railroad*, 165 Mass. 267. *Murch* v. *Wilson*, 168 Mass. 408. *Sweeney* v. *Berlin & Jones Envelope Co.* 101 N. Y. 520. *Appel* v. *Buffalo, New York, & Philadelphia Railway*, 111 N. Y. 550. *Hayden* v. *Smithville Manuf. Co.* 29 Conn. 548. *Tuttle* v. *Detroit, Grand Haven, & Milwaukee Railway*, 122 U. S. 189.

The second class of cases is where an employee has suffered from the negligent conduct of an employer in reference to some matter not included in his assumption of risks by virtue of the contract under which he is working at the time of the injury. As to these cases different considerations apply. The employer is under an implied contract or duty to provide safe and proper machinery, tools, and appliances for the employee. There is often evidence on which it is contended that he is guilty of negligence in this particular. In dealing with such a case, upon the question whether the plaintiff is precluded from recovery on the ground that he assumed the risk, it must be assumed that the jury properly might find the defendant guilty of negligence. The question is to be determined in reference to the possibilities of a finding either way on that point. If, looking to the conduct of the defendant alone, the finding ought to be against him, on what ground can the plaintiff be cut off from his right to damages? Under the law of negligence it is only on the ground that he is himself in fault through failure to exercise proper care, or otherwise. If the facts relied on to establish this defence are merely that he continued to work, knowing of the defect which afterwards caused his injury, and if the defect is so slight,

viewed in reference to the defendant's duty to provide for his safety, that it is just a little outside of the line which separates due care on the part of the defendant from negligence, the question arises whether there was such a voluntary assumption of the risk on the plaintiff's part as to put him in the same category with the defendant in reference to the alleged negligence. It is the law of Massachusetts that, if he knew and fully appreciated the risk, and continued to work without any special exigency constraining him so to do, his exposure to the risk must be deemed to have been voluntary, and if the condition of the defective part was such that to provide it, or keep it for his use, constituted negligence on the part of the defendant who was under an obligation to have it safe, his continued use of it, knowing and appreciating the danger from it, equally constituted negligence which prevents him from recovery. This rule bears rather hard upon employees, for, *ex hypothesi*, the employer is primarily in the wrong, and practically the employee has no alternative but to abandon his contract and quit the service, even though that might mean starvation for his family. His remedy by a suit upon his contract would be costly and uncertain, and the damages recoverable would be small. In England, and in some of the American States, continuing to work under such circumstances is not deemed, as matter of law, a voluntary assumption of the risk. *Smith* v. *Baker*, [1891] A. C. 325. *Yarmouth* v. *France*, 19 Q. B. D. 647. *Thrussell* v. *Handyside*, 20 Q. B. D. 359. But the rule is established in Massachusetts, and I do not desire to depart from it.

It must be remembered that the rule is applicable only when the plaintiff understands and appreciates the risk. Nothing less than his full understanding and appreciation of it can make his exposure to the danger voluntary, and charge him with negligence whenever the employer is negligent. It is only when his knowledge of the danger is such as to make his conduct as culpable as that of the employer that he can be precluded from recovery on this ground. The question oftenest arises when it is difficult to tell whether there was sufficient danger properly to charge with negligence the employer whose duty it was to know that his appliances were safe, and if the conditions are such that the conduct of the employer in procuring the defective appliance

falls only a hair's breadth below the line of due care, nothing less than a full understanding of the danger can charge the employee with negligence in using it when it was provided for him.

It will hardly be contended that a hired servant always works at his own risk when he continues in service after discovering that his employer's negligence in failing to repair machinery, or in introducing unsafe machinery, has somewhat increased the perils of his situation. So to hold would altogether deprive the employee of the benefit of the salutary provision of law which makes it the duty of the employer to provide proper tools and machinery with a view to his safety. It is often consistent with due care for him to continue in the service when he knows that the provision for his safety is not as good as it should be. He may think that the danger is not great enough reasonably to require him to refuse to work. That full knowledge and appreciation of the risk on the part of the plaintiff are essential to the maintenance of this defence in cases of this kind has repeatedly been held, and I am not aware that any different doctrine has been enunciated. *Thomas* v. *Western Union Telegraph Co.* 100 Mass. 156. *Mahoney* v. *Metropolitan Railroad*, 104 Mass. 73. *Linnehan* v. *Sampson*, 126 Mass. 506. *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1. *Ferren* v. *Old Colony Railroad*, 143 Mass. 197. *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155. *Mahoney* v. *Dore*, 155 Mass. 513. *Tenanty* v. *Boston Manuf. Co.* 170 Mass. 323.

That the danger is obvious is not necessarily enough to defeat the plaintiff on this ground, although it may warrant a finding by a jury against him. The danger may be so great and so obvious that, in any possible view of the evidence, the general judgment of common men would at once condemn his conduct in continuing to work as careless. In such a case it would be the duty of the court to order a verdict against him on the ground of a want of due care; but it would not necessarily follow that he voluntarily assumed the risk, so as to come within the doctrine, *Volenti non fit injuria*. He might have been stupid, or inattentive, and merely careless in not ascertaining the nature and extent of the danger.

To decide against a plaintiff on this ground involves an affirmative finding of fact. The negligence which is fatal to

his case is not merely an omission to take proper precautions. It is positive negligent action. It is a voluntary exposure to a well understood danger so great that due care requires him to avoid it. The defendant must establish the plaintiff's knowledge and appreciation of the risk and voluntary assumption of it, if he would prevail when on other grounds the plaintiff's case might be decided in his favor. When a fact is to be established by evidence, a court can seldom say, as matter of law, that it is proved. Where the plaintiff has the burden of proof to show the defendant's negligence or his own due care, the case is different. There the court must determine, as matter of law, in the first instance, whether any evidence has been introduced in support of the propositions. As was said in *Osborne* v. *London & Northwestern Railway*, 21 Q. B. D. 220, of the discussions in *Yarmouth* v. *France*, 19 Q. B. D. 647, and in *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, "Those observations go far to make it hard for a defendant to succeed on such a defence as that relied on here, for it is probable that juries would often find for plaintiffs on the ground that they had not full knowledge of the nature and extent of the risk, but that cannot be helped."

In cases of contractual assumption of the risk, it is often claimed that the plaintiff has introduced no evidence of any danger which was not obvious, and so included in his implied contract, whether he actually understood it or not. But in regard to risks not assumed by the plaintiff in his contract for service resulting from conduct of the defendant while the plaintiff is working under his contract, I think it can seldom be said, as matter of law, that the employee has lost his legal right to hold his employer for the consequences of his negligence on the ground of voluntary assumption of the risk by continuing to work, unless his own conduct is such that, viewed independently, it furnishes no evidence of his due care.

In the present case it cannot be contended that there was a contractual assumption by the plaintiff of the risk of injury from the use of an unsafe and improper stirrup strap. No such risk was obvious when he entered the defendant's service. On the contrary, the defendant, by his contract, impliedly agreed to furnish safe and proper straps. There was no new contract nor any new consideration for a contract when the plaintiff obeyed

the order of Abbott to use the strap which broke. The rights
and obligations of both parties created by the contract of hiring
remained unchanged. It may be that a jury would have found
that the plaintiff was careless in consenting to use the strap ;
but certainly the court cannot say so as matter of law, and
the opinion does not put the decision on that ground. The
ground of the decision is that the plaintiff assumed the risk.
The opinion implies that it may be doubtful whether the de-
fendant was negligent, although there can be no doubt of his
duty to furnish safe and proper straps. If the jury found that
the defendant was primarily responsible for the injury, as the
opinion assumes that they might find, the plaintiff is cut off
from recovery by a holding of the court, as matter of law, that
his relation to the risk by reason of his consenting to use the
strap under orders was such as necessarily to make him guilty
of negligence. This seems to me to leave out of consideration
the facts that the defendant was under a legal obligation to
know that the strap was safe, while the plaintiff was under no
such obligation, and that the plaintiff might rely to some extent
upon the probable performance of duty by his employer and
upon the implied representation of his employer, as well as the
express representations of Abbott the foreman, that the strap
was sufficiently strong. I think that there was evidence for the
jury on this point, but that the court could not properly say, as
matter of law, that the proposition was established. Dealing
with it as a matter of fact, I think the weight of the evidence
was that he did not fully understand and appreciate the risk.
He was undoubtedly influenced by the statements and represen-
tations of Abbott. He knew the strap was defective, but he did
not know how strong it was. No one can accurately estimate
the strength of a piece of old leather from the appearance of it.
He saw Abbott pull upon it, but he did not know how much
force was applied in pulling. Probably he thought it was
stronger than it proved to be. If the strap was only just bad
enough to make the defendant liable for negligence in furnish-
ing it, I do not think it follows, as matter of law, that the plain-
tiff was negligent in not refusing to use it. I think the questions
at issue were questions of fact for the consideration of the jury,
under proper instructions. Except in cases of contractual as-

sumption of the risk, I think there is great danger of improper interference with the right of plaintiffs to a trial by jury upon questions of fact, in holding as matter of law, even when the defendant might be found to be negligent, and even when it does not appear on other grounds that the plaintiff has failed to show his own due care, that the plaintiff has lost his right to recover by a voluntary assumption of the risk.

I hope that this fashionable modern doctrine will not lead to a departure from the sound principles on which the law of negligence rests.