## JANE V. HOARD *vs.* BLACKSTONE MANUFACTURING COMPANY.

Worcester.  October 2, 1900. — October 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Personal Injuries — Depression in Floor of Building — Assumption of Risk — Accident.*

If a depression in the floor of a building is a part of the permanent construction thereof, plainly visible when an employee enters the owner's service, and the employee agrees to work where it is necessary to pass through the building in going to and from the place of his service, he impliedly agrees to assume all the risks resulting from this mode of construction, and the employer owes him no duty to change the building in this particular; and, there being nothing else in the management of the building showing negligence of the employer which caused the accident resulting from stepping into the depression, there is no evidence of negligence on the part of the employer.

TORT, for personal injuries occasioned to the plaintiff, while in the defendant's employ, by stepping into a depression in the floor of the defendant's mill. Trial in the Superior Court, before *Lawton,* J., who, at the close of the evidence of the plaintiff, refused to rule, as requested by the defendant, that the plaintiff could not recover, and submitted the case to the jury, who returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*F. B. Smith & T. H. Gage, Jr., (W. S. B. Hopkins* with them,) for the defendant.

*R. B. Dodge, Jr. & W. J. Taft,* for the plaintiff.

KNOWLTON, J.  The plaintiff was injured by stepping into a depression about twelve inches deep, a few feet long, and four or five feet wide, in the floor of the defendant's mill. This depression was where the elevator passed up and down through the building, and was made by an opening in the floor, with a slide

drawn by weights underneath, so arranged that it closes automatically over the ceiling of the room below when the elevator passes up or down, leaving a depression the depth of the floor. The plaintiff was employed in an adjacent mill of the defendant, in a room the entrance to which was through the room where the depression was, in a course which passed near the depression, and then by a covered passageway between the two buildings to the door. She had previously worked for a considerable time in the building in which the depression was, and knew of the elevator well and of the depression, which she had been accustomed to pass daily while she worked in the other room for three weeks before the accident. Along the line of passage of persons coming out from the room where the plaintiff worked was a row of iron posts two or three inches in diameter, running from the floor to the ceiling, set in a straight line and extending nearly to the elevator well. At the corner of one side of the elevator well were two wooden posts against which the elevator ran, and there was a gas light close by the elevator well. The plaintiff testified that in coming out from the room where she worked she was accustomed to walk on the left hand side of the row of iron posts until she came near the iron post next to the elevator, and then to turn to the right and pass that on the right hand side, leaving the depression in the floor on the left. Warp beams, about six feet long including the gear and spindles at each end, were placed in rows upon the floor on each side of the path in which the plaintiff and others were accustomed to walk as they passed from the room where she worked, the number so placed varying considerably at different times. The plaintiff testified that on the night of the accident these were so arranged as to leave a space about two feet wide on the left of the line of iron posts as she was coming towards the elevator, and about one foot and a half wide on the right of the iron post. When she came out that night the elevator was at a story above, and the slide was closed. The plaintiff, instead of turning out to the right of the iron post near the elevator, failed to notice that she had reached it, and passed to the left of it and stepped into the depression. In giving the reason for the accident she said in testimony, " Well, as I thought, I had got to the point to turn out and I fell in." The only cause for the accident deducible from the

testimony is that she failed to notice that she had reached the post where she was accustomed to turn out, and walked into the depression.   There is no suggestion that there would have been any difficulty in turning out if she had noticed where she was.

It is difficult to find in the case any evidence tending to show that the plaintiff was in the exercise of due care.   She testified that her sight was not very good, but she said nothing of any particular defect.   There was a gas light as usual, about two feet from the elevator, and she said it seemed that night as if the light was very dim.   This she sought to explain by the fact that in coming from her room through the covered passageway connecting the two buildings she passed through an atmosphere colder than that in the rooms, and suggested the possibility of steam condensing on her glasses.

Without determining whether there was any evidence that she was in the exercise of due care, we must sustain the exceptions on the ground that there was no evidence of negligence on the part of the defendant.   The depression in the floor was a part of the permanent construction of the building, that was plainly visible when the plaintiff entered the defendant's service.   She agreed to work where it was necessary to pass through a building so constructed in going to and from the place of her service, and she impliedly agreed to assume all the risks resulting from this mode of construction.   The defendant owed her no duty to change its building in this particular.   *Gleason* v. *Smith*, 172 Mass. 50.   *Murch* v. *Thomas Wilson's Sons*, 168 Mass. 408, and cases there cited.   There is nothing else in the management of the building that shows negligence of the defendant which caused the accident.   The warp beams, so far as appears, were properly left in rows upon the floor.   That was the usual and ordinary method of doing the business when the plaintiff made her contract, and there is nothing to indicate that there was any difficulty in walking out safely by the elevator while they were there.   The gas light was burning where it had always been, about two feet from the depression, and, so far as appears, there was nothing there which exposed the plaintiff to danger except those conditions in the management of the business, in reference to which she impliedly contracted when she entered the defend-

ant's service, and with which she was perfectly familiar at the time of the accident. What we have already said shows that the defendant owed her no duty to warn her of the danger of stepping into this depression. *Carey* v. *Boston & Maine Railroad*, 158 Mass. 228. *Ford* v. *Mount Tom Sulphite Co.* 172 Mass. 544, 545.

The construction of the floor does not appear to have been in violation of the Pub. Sts. c. 104, § 14.

*Exceptions sustained.*