JAMES E. GILGAN, administrator, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Worcester.    September 28, 1903. — February 26, 1904.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence*, Employer's liability.  *Railroad*.

A flagman in a freight yard, whose duty it is to tend switches, assumes the risk of being run down, while throwing a switch, by a train which is backing slowly in obedience to a signal given by him, where the accident is due to his miscalculating the speed at which the train is moving and his ability to throw the switch in time to get out of the way safely, and where there is nothing to show negligence on the part of the engineer.

TORT, under the employers' liability act, for the conscious suffering and death of the plaintiff's intestate. Writ dated April 21, 1902.

At the trial in the Superior Court *De Courcy*, J. at the close of the evidence ruled that the plaintiff could not recover and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*G. S. Taft*, (*E. I. Morgan & R. A. Stewart* with him,) for the plaintiff.

*A. P. Rugg*, for the defendant.

MORTON, J. This is an action of tort under R. L. c. 106, §§ 71, 72, by an administrator to recover damages for the conscious suffering and death of his intestate, one John Gilgan, caused, it is alleged, by injuries received in the defendant's service through the negligence of one Haskell an engineer in control of a locomotive engine in the defendant's employment.

The intestate was a flagman and also tended certain switches. Whether or not he was required to tend the switches as part of the work for which he was originally hired is immaterial. He had done it, as there was testimony tending to show, for about a year under circumstances which would have warranted a finding that it had become a part of his duty, and we assume that when injured he was acting within the scope of his employment. The accident happened on the morning of January 16, 1902. An engine with a long train of cars attached to it and operated by the defendant was backing down from one freight yard in the city of Worcester to another. It was backing slowly, from four or five to eight miles an hour and in obedience to a motion to that effect given to the engineer by Gilgan. On the track on which the train was backing down, another train was approaching. Gilgan gave the engineer of that train a motion to stop and he did so. Between the two trains was a cross-over which enabled the train that was backing down to pass from the east main or outward bound track on which it was, and on which the approaching train stood, to the west main or inward bound track. In order to use the cross-over it was necessary to throw two switches. Gilgan had been in the habit of throwing them for the purpose of allowing trains to make the cross-over almost daily, as the testimony tended to show, and sometimes several

times a day for a year or more.  As the train backed down
Gilgan threw the first switch, and then continued along ahead
of the train "at a good trot," as one of the witnesses testified,
for the purpose of throwing the second one.  He reached the
switch a short distance ahead of the train and while in the act
of throwing the switch was struck by the tender and received the
injuries from which he subsequently died.  The distance between
the handle or lever operating the switch and a beam projecting
from the rear end of the tender was between fifteen and sixteen
inches when the handle was down and was two inches less when
the handle was in position for operating the switch.

We assume that the plaintiff's intestate was injured while in
the act of throwing the switch, and not while attempting to get
upon the foot board of the tender, as there was some testimony
tending to show might have been the case.  But we think that
there was nothing tending to show negligence on the part of the
engineer of the engine that was backing down.  He was backing
down as motioned to do by the plaintiff's intestate.  The speed,
from five to eight miles an hour, was not excessive, and the at-
tention of the engineer was rightly directed to the care of his
engine, and the train which he was backing.  He knew that the
plaintiff's intestate was a man of experience, and he may well
have supposed that he was competent to look out for himself
and that he would do so.  No doubt he was bound to exercise a
reasonable regard to the safety of Gilgan, but there is nothing,
it seems to us, that shows that he was at fault for the accident.
In making the cross-over his movements were subject to Gilgan's
direction and control, and in the absence of any direction or
warning from Gilgan that he was going too fast or to slow up
still more, he may well have supposed that he was proceeding in
a proper manner.  He himself, as we understand the situation,
was on the side of the engine opposite to the switch where Gil-
gan was, but there is no contention that the fireman who was on
the side next to Gilgan was not looking out for the signals, if
any, that might be given.  It would seem that Gilgan miscalcu-
lated the speed at which the train was moving that was backing
down, and his ability to throw the switch in the time that he had
to do it in, and get out of the way safely.  For this no one was
to blame except himself.  He was not required to throw the

switch in the face of a manifest danger, and if he attempted to do it and was injured, the defendant cannot be held liable.   His declarations that he was run down have no tendency to show that the risk was not an obvious one, or, in view of what clearly appears from the plaintiff's evidence, to show that the engineer was careless.   See *Goodes* v. *Boston & Albany Railroad*, 162 Mass. 287 ;  *Coombs* v. *Fitchburg Railroad*, 156 Mass. 200.

*Exceptions overruled.*