CLEMENT BONIN, 2D, *vs.* HARRY BALLARD & another.

Worcester.    October 2, 1907. — November 26, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Agency. Joint Tortfeasors. Practice, Civil,* Parties, Inconsistent contention. *Master and Servant. Negligence,* Employer's liability.

The objection that, in an action of tort for injuries alleged to have been caused by the negligence of an agent, the agent and his principal cannot be joined as defendants, here was passed over for the purposes of this decision.

Where in an action of tort for personal injuries, the plaintiff, on the argument of his exceptions before this court after a verdict has been ordered for the defendant, contends that he was not the servant of the defendant when his injuries were incurred, *it would seem* that the verdict for the defendant must have been ordered rightly upon the same contention at the trial, if the only counts on which the plaintiff can recover are based on the averment that he was the servant of the defendant.

A teamster in the employ of a coal company, who is sent by his employer with his team to a stone quarry to draw stone for the proprietor of the quarry, and on his arrival is ordered by the superintendent of such proprietor to unhitch his horses and hitch them to a stone cart, and does so, and then is put to work by the superintendent to load the cart with stone, in an action against the proprietor of the quarry for injuries incurred by him while thus at work, can be found to have been the servant of the defendant at the time of his injuries.

Stones temporarily placed in a pile at a stone quarry are not ways, works or machinery of the proprietor of the quarry within the meaning of R. L. c. 106, § 71, cl. 1.

There is no duty on the part of the proprietor of a stone quarry or of his superintendent to warn a teamster, employed for the first time to load and haul stone and wholly inexperienced in that work, that large stones temporarily placed in a pile, if treated carelessly, may fall off and injure a person near the pile.

⋅ TORT against Harry Ballard and Mary A. Ballard for personal injuries incurred by the plaintiff on May 15, 1905, from large stones falling upon him in a quarry, known as the Ballard

quarry, operated by the defendant Mary A. Ballard near that part of Worcester known as Quinsigamond Village, with four counts, the first, at common law, alleging that the falling of the stones was caused by the negligence of the defendant Harry Ballard acting as manager or agent of the defendant Mary A. Ballard, the second count, under the employers' liability act, alleging a defect in the ways, works or machinery of the defendants, the third count also under the statute, alleging negligence of a superintendent, and the fourth count, at common law, alleging neglect of the defendants to keep their ways and appliances in a proper and safe condition and a failure to warn and instruct the plaintiff. Writ dated October 11, 1905.

At the trial in the Superior Court before *Wait*, J., the defendants agreed that due notice of the time, place and cause of the injury had been given them by the plaintiff; that the defendant Mary A. Ballard was the widow of John S. Ballard, and that the quarry, where the plaintiff was injured, was part of the trust estate of John S. Ballard, of which Mary A. Ballard was trustee, to the income of which she was entitled during her life; that the defendant Harry Ballard was operating the quarry for the trustee, Mary A. Ballard, his mother, under a salary, and was in actual management thereof for her.

The plaintiff testified that he was about forty-two years of age; that on the day he was injured he was in the employ of the People's Coal Company in Worcester, and had been with that company for several years as a teamster on a coal delivery team; that on May 15, 1905, he went to the stables of the People's Coal Company and was directed to go to the Ballard quarry with his team and draw some stone from the quarry to the wire works; that he hitched his horses to a coal cart and, with another teamster of the People's Coal Company, driving another team, went to the Ballard quarry, arriving there soon after seven o'clock in the morning; that as he drove into the quarry he was met by one Sullivan, who was the foreman or superintendent of the quarry, who told him to unhitch his horses from his coal cart and hitch them to a stone cart; that he did so, and Sullivan then asked him if he ever had worked in a quarry before or ever had handled stones, to which he replied that he had not; that Sullivan then told him to back down into the "pit" and

get a load of hand stones and he would send some men to help him load; that Sullivan pointed out to him where he wanted him to go from where they were standing. The plaintiff testified as to this: "He told me to back in there and pick up all the loose stones down in the bottom there"; that he backed his team to "right where Sullivan had told him to go"; that the "pit" or place to which he went was a depression of about six feet in the road through the quarry and there was on the left side of his team, after he had reached the place to which he had been directed, a pile of large stones, weighing from five hundred to twelve hundred pounds and some of which were from three to five feet long, two or three feet wide, and from six to ten inches thick, the pile being about twelve feet high; that the edge of the pile of stones came to within about six feet from the side of the team; that three men, two of whom afterwards were called away, came to help him load the team with the hand stones lying round the team; that hand stones were such stones as a man could lift, large and small; that his team was about loaded when he heard some men near him say that they had better break up some of these stones as they were too large and heavy to lift; that they were using a large iron ball and dropping it or throwing it to break the stones; that he had just picked up a stone and was about tossing it upon the load while standing on the left side of the team, from four to six feet from it, when some of the large stones from the pile came down upon him ; that one of them struck him in the stomach and knocked him over and another caught him on the leg and broke it; that it was about a quarter to eight o'clock when the pile came down; that on the other side of the pile of stones was a derrick, and shortly before the pile fell a four horse team had been driven around near the derrick for loading stone from the pile.

Other witnesses testified for the plaintiff, and there was evidence for the defendants that the accident was caused by the plaintiff's pulling out small stones called "pinners" which were placed between the larger stones of the pile to hold them in place, that the plaintiff had been told not to pull out any of the pinners, that after he had done so and just before the pile fell he was told to step away from it, and that iron balls were not used on that day to break up the stones for the plaintiff's team.

At the close of the evidence the judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*H. L. Parker, Jr.*, for the plaintiff.

*H. F. Harris & C. C. Milton*, for the defendants.

SHELDON, J.   Apart from the difficulty in the way of maintaining an action against the two defendants jointly (*Mulchey v. Methodist Religious Society*, 125 Mass. 487, 489), the plaintiff could not recover upon the first count of his declaration because there was no evidence of negligence on the part of the defendant Harry Ballard.   As to the other counts, it would perhaps be enough to say that each of them rests upon the averment that the plaintiff was a servant of one or both of the defendants; and, as he has contended in this court, that he did not become and was not such a servant, and may be presumed to have made the same contention in the Superior Court, the verdict was ordered rightly upon this contention ; for if there was no such relation, the plaintiff must fail upon each of these counts.   But we prefer to pass upon the merits.

The jury doubtless might have found upon the evidence that although the plaintiff was in the general employ of the People's Coal Company, that company had so lent his services to the Ballard estate that the control over him had passed for the time to that estate, and that at the time of the accident he was a servant of the defendant Mary A. Ballard as the trustee of that estate, and had as against her the rights of a servant. *Delory* v. *Blodgett*, 185 Mass. 126, and cases there cited.   There is nothing in *Oulighan* v. *Butler*, 189 Mass. 287, 290, inconsistent with this.

But there was no evidence of any defect in the ways, works or machinery of this quarry.   The stones of which one fell upon the plaintiff were merely temporarily put in a pile, and could in no sense be considered a part of such ways, works or machinery.   *Feeney* v. *York Manuf. Co.* 189 Mass. 336.   They were like the pile of boards in *Campbell* v. *Dearborn*, 175 Mass. 183.   This pile was not intended to be itself used by the workmen, like the staging in *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131.   Accordingly the action could not be maintained upon the second count of the declaration.

Nor, if we assume that Sullivan could have been found to be a superintendent within the meaning of R. L. c. 106, § 71, cl. 2, was there any evidence of negligence on his part. It does not appear that he had any reason to suppose that he was sending the plaintiff into a dangerous place without proper warning. It is not shown that there was any such unknown danger as to require a warning. *Sampson* v. *Holbrook*, 192 Mass. 421. If the plaintiff's own testimony is to be followed, the fall of the stone that injured him may have been due to the carelessness of his fellow servants in the course they adopted to break up the larger stones. If the defendants' testimony is to be followed, it was due to the plaintiff's own negligence. There could be no recovery upon the third count.

As to the fourth count, it is enough to say that there was no evidence to show either that the ways and appliances of the quarry were in an unsafe condition, or that there was any such state of affairs as made it the duty of Harry Ballard to give any instruction, warning or information to the plaintiff. *Davis* v. *Forbes*, 171 Mass. 548. *Kanz* v. *Page*, 168 Mass. 217, 218. *Duffy* v. *New York, New Haven, & Hartford Railroad*, 192 Mass. 28. *Stuart* v. *West End Street Railway*, 163 Mass. 391. The doctrine of *res ipsa loquitur* has no bearing upon this case; and the cases relied on by the plaintiff are not applicable.

*Exceptions overruled.*