(133 App. Div. 467.)

## RYAN v. CORTLAND CARRIAGE GOODS CO.

. (Supreme Court, Appellate Division, Third Department. June 24, 1909.)

**1.** Negligence (§ 3*)—What Constitutes.

Failure to guard against that which has never occurred and which is very unlikely to occur, and which does not naturally suggest itself to prudent men as something which should be guarded against, is not negligence.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763; vol. 8, pp. 7729–7731.]

**2.** Master and Servant (§ 278*)—Injuries to Servant—Sufficiency of Evidence.

In an action for injuries to an employé by fall of an elevator door, *held*, that defendant was not liable.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

**3.** Master and Servant (§ 270*)—Injuries to Servant—Evidence.

Through the catching on an obstruction and the subsequent release of elevator counterweights, the elevator shot suddenly upward and struck the well doors with such force as to dislodge them from their runners, and one of them fell on and injured plaintiff, an employé. *Held*, that evidence as to other actions of the elevator not shown to have been produced by a like cause as that causing the accident to plaintiff was inadmissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 919; Dec. Dig. § 270.*]

Kellogg, J., dissenting.

Appeal from Trial Term, Cortland County.

Action by Patrick Ryan against the Cortland Carriage Goods Company. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

The action is for personal injuries received by the plaintiff while using a freight elevator in the defendant's factory, where he was employed. He and another employé entered the elevator on the first or shipping room floor, and started it up to go to the second floor. It was noticed that the cable was getting loose, and the plaintiff stopped the elevator. Just as it stopped, it gave a sudden jerk upwards, a crash was heard overhead, and the plaintiff jumped out and struck on the shipping room floor two or three feet below. As he jumped, a heavy door that was made to operate automatically by coming in contact with an inverted V-shaped device on top of the elevator, and which was one of a pair of doors which closed the well of the elevator, fell and struck him, causing the injuries of which he complains. The elevator had a counterweight to balance its weight consisting of several iron blocks 3x6 inches and about 12 inches long fastened together with iron rods with the top and bottom blocks 14 inches long and constructed with guide shoes upon them to run in guideways made of strips of hardwood secured to guide posts about 14 inches apart. These guideways extended from the top to the bottom of the building, which consisted of three floors. The guideways in which the counterweight ran were covered on the first and second floors, but were not covered on the third floor, so that the counterweight on that floor was open to the room and unprotected. In the operation of the elevator the bottom of the counterweight did not come as high as the third floor when the elevator was down to its lowest point, and the weight was at its highest point. The several pieces of iron of which the counterweight was composed were rough and varied slightly in thickness. The accident was caused by a co-employé who wheeled a barrel of castings and set it down near the open guideway on the third floor, so near that one of the hoops around the bulge

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the barrel caught under the protruding surface of one of the pieces of iron of the counterweight in the guideway, and held the weight there for a moment until the hoop splintered and let the counterweight fall with great force, with the resulting effect of suddenly jerking the elevator upwards against the automatic doors over it at the second floor in the elevator well, with such force of impact as to dislocate the doors from their runners so that they fell, and one of them struck the plaintiff after he had jumped.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Edwin Duffy, for appellant.
Thomas E. Courtney, for respondent.

CHESTER, J. The accident was such an unusual one and the cause thereof was so unique and peculiar that the case seems to fall within that class of cases which hold that the master, in the exercise of reasonable diligence and prudence, cannot be charged with negligence for a failure to anticipate and guard against the accident. The elevator had been made and installed by a reputable manufacturer, and was well built. No defects were shown in it, or in the mechanism for its operation which were approximate causes of the accident. It had been in successful operation without accident for several years, and had made many thousand trips without the counterweights ever having been caught as in this instance so far as disclosed by the evidence. Failure to guard against that which has never occurred, and which is very unlikely to occur, and which does not naturally suggest itself to prudent men as something which should be guarded against, is not negligence. Favro v. Troy & West Troy Bridge Co., 4 App. Div. 241, 38 N. Y. Supp. 433; Creswell v. United Shirt & Collar Co., 115 App. Div. 12, 100 N. Y. Supp. 497. No inference unfavorable to the defendant should be drawn from the fact that it had taken the precaution to guard the guideways below the third floor for the reason that the conditions on the third floor were entirely different. The counterweights did not pass above the third floor, and there was therefore no possibility of an obstruction getting beneath them on that floor. This judgment makes the defendant responsible for something which naturally would not be anticipated, and makes him practically an insurer against accidents.

Again, reversible error was committed in permitting the plaintiff to show against the defendant's objections and exceptions that on prior occasions this elevator had gone to the roof of the building requiring efforts to get it down and that it had also on different occasions dropped. There is no proof that those peculiar manifestations were occasioned by the same or a like cause which produced this accident, and, of course, the dropping of the elevator could not be occasioned by the same cause. It is true that the trial justice charged the jury there was no claim that the action of the elevator on other occasions caused the injury, but that fell far short of telling them that they must not consider that evidence as bearing on the alleged negligence of the defendant in failing to guard the guideways, but, on the contrary, the mischief was intensified by the court telling the jury at the instance of plaintiff's counsel that they must consider all the evidence that had been given. This was just the kind of evidence that would naturally

mislead a jury and operate prejudicially to the defendant. We think therefore the judgment cannot stand.

Another matter has been called to our attention which cannot pass unnoticed. Upon the argument, the appellant's counsel charged that in the brief of the respondent's counsel there were numerous statements of facts, not supported by the evidence, and which grossly misrepresented the testimony in the case. They were of such a grave character that the counsel making the charges was directed to submit to the court, and to the defendant's counsel in writing a specification of the matters thus orally called to our attention. This has been done and 21 instances have been pointed out where it is claimed that offenses of this character have occurred, and the respondent's counsel has submitted his answer to these charges in writing. We have given the matter careful consideration, and we find that the charges have in the main been sustained. In only one or two instances have they failed, and in one instance the charge was withdrawn. Some of the charges related to matters of slight, if any, materiality with reference to the real issues to be determined, but others had reference to matters of the most vital moment. It will serve no good purpose to refer to these in detail. It may be stated generally, however, that some of the statements were extravagant in their character, and many others as well as these had no evidence whatever to support them. Some of these misstatements of facts have been repeated in the counsel's written answer to the charges when it must have been evident to him that they were wholly unsupported by any evidence in the case. The most charitable view that could be given the counsel's conduct with reference to some of the statements is that he fails to see the distinction between inferences which he seeks to draw from the evidence, and facts testified to by witnesses, and that he makes the assertion of his inferences as facts. This is wholly unwarranted. A brief of this character, instead of being an aid to the court in determining the questions involved, furnishes no aid whatever, because suspicion must naturally rest upon every statement asserted as a fact in it and little reliance be placed upon a brief so made, and the comsel submitting it is deserving of the severest censure.

We make no criticism upon counsel's urging upon the court in the discharge of his professional duty the most favorable arguments in aid of his client's cause of which it is susceptible, but this will not justify any misrepresentation of the facts nor the stating as facts matters which are not fairly deducible from the evidence.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur, except KELLOGG, J., who votes for affirmance.