with, any other construction.    Both cestuis que trust having predeceased their mother, their interest in the trust fund lapsed, and it became part of the residuum of the estate, which, under the provisions of the residuary clause of the will, passed to and became the property of the appellants.

Judgment reversed, and a new trial granted; costs to abide the final award of costs.    All concur.

## OZOGAR v. PIERCE, BUTLER & PIERCE MFG. CO.

(Supreme Court, Appellate Division, Fourth Department.    November 17, 1909.)

1. APPEAL AND ERROR (§ 927*)—CONFLICTING EVIDENCE—NONSUIT.

Where there is a conflict in the evidence, it should, on appeal by defendant from an order setting aside a nonsuit, be deemed settled most favorably to plaintiff, who is entitled to the benefit of any inferences which may legitimately be drawn therefrom.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.*]

2. APPEAL AND ERROR (§ 1145*)—DECISION—CONSTRUCTION.

An order setting aside a nonsuit and granting a new trial, made pursuant to Code Civ. Proc. § 999, being discretionary, and it not appearing that it was granted on questions of law, its affirmance cannot be regarded as a decision by the appellate court that plaintiff established a prima facie cause of action on the merits.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1145.*]

3. MASTER AND SERVANT (§ 155*)—WARNING AND INSTRUCTING SERVANT—DUTY OF MASTER.

A master was not bound to instruct a servant regarding certain work, where the most minute instructions, if given, would only call attention to what was perfectly obvious.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 310; Dec. Dig. § 155.*]

4. MASTER AND SERVANT (§ 132*)—METHODS OF WORK—DUTY OF MASTER.

A master is not required to adopt the safest known methods of performing his work, but only such as are reasonably safe, and as would be adopted by a person of ordinary care and prudence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 267; Dec. Dig. § 132.*]

5. MASTER AND SERVANT (§ 137*)—INJURIES TO SERVANT—METHODS OF WORK—NEGLIGENCE.

That it would have been safer to have shifted a casting by means of a crane did not render the master negligent in having the work done by hand; sufficient men being provided for the purpose, and it not appearing that the latter method was unsafe or dangerous when enough men were furnished.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. § 137.*]

6. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In an action for injuries through the falling of a casting, which plaintiff and other servants were moving, evidence *held* insufficient to establish negligence on defendant's part.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972; Dec. Dig. § 278.*]

Spring and Kruse, JJ., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Onondaga County.

Action by Andrew Ozogar against the Pierce, Butler & Pierce Manufacturing Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

See, also, 128 App. Div. 910, 112 N. Y. Supp. 1139.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Edward Schoeneck, for appellant.
Thomas Hogan, for respondent.

McLENNAN, P. J. The important question presented by this appeal is: Is there any evidence which tends to establish actionable negligence on the part of the defendant, which was the proximate cause of the accident. In approaching the discussion of that question, we are mindful of the rule that, where there is a conflict in the evidence, it should be deemed settled most favorably to the plaintiff, and that he is entitled to the benefit of any inferences which may legitimately be drawn therefrom. This case has been twice tried. At the first trial, at the close of the plaintiff's evidence, upon defendant's motion, the court granted a nonsuit. Subsequently a motion was duly made upon the minutes by the plaintiff to set aside the nonsuit and for a new trial, which motion was granted, and an order to that effect, but which did not state the grounds upon which it was made, was duly entered. 55 Misc. Rep. 579, 105 N. Y. Supp. 1087. From such order an appeal, upon case and exceptions, was taken to this court, and it was unanimously affirmed. 128 App. Div. 910, 112 N. Y. Supp. 1139. Such order was made pursuant to section 999 of the Code of Civil Procedure, was discretionary, and, it not appearing that it was granted upon questions of law, its affirmance cannot be regarded as a decision by this court that the plaintiff had established a prima facie cause of action upon the merits.

The accident which is the subject of this litigation occurred on the 26th day of July, 1905, between 2 and 3 o'clock in the afternoon, while plaintiff was in defendant's employ, and resulted from the falling of a cast-iron flask, so called, which the plaintiff and other employés of the defendant were engaged in moving. The flask fell upon plaintiff's right hand and seriously injured the same. The defendant is a manufacturing corporation, engaged in operating an extensive plant, consisting of several buildings, occupied as foundries, machine shops, etc., located in the eastern part of the city of Syracuse.

At the time in question certain employés of the defendant were engaged in conveying from the foundry building to the machine shop, where it was to be put on an elevator and carried to an upper floor, a cast-iron flask, so called, which concededly weighed 1,300 pounds. It was rectangular in shape, was 5 feet 8 inches long, 5 feet 1 inch wide, and 8 inches deep, and the interior was divided into sections or pockets by iron partitions. The flask (which was produced in court as an exhibit) is shaped very much like an ordinary bookcase; the center being entirely occupied with pockets of different sizes. The casting

was placed upon a car 14 inches high, 5 feet long, and 3 feet 6 inches wide, which ran on a narrow-gauge track. It was loaded upon the car in the foundry building by means of a crane, and it was placed lengthwise thereon and parallel with the track. It was necessary to so place it on the car because of certain doors through which it had to pass on the way to the machine shop, which were not wide enough to permit the casting to pass through if laid flat on the car. As respondent's counsel states in his brief, in order to do this (to pass through the several doors), it was necessary to stand the casting lengthwise and parallel with the track, with five or six men pushing the car and holding onto the flask in order to keep it in position. When the flask was so loaded onto the car, it was pushed along upon the track through the doors of various buildings and into the machine shop, where plaintiff was working.

As before said, it was desired to take the casting from the machine shop by means of an elevator to an upper floor. The car was stopped in front of the elevator door, and it was discovered that it was necessary to change the casting from an upright position and lay it down flat upon its back or front, in order to permit it to be taken through the elevator door and into the elevator. The employés of the defendant engaged in moving the flask were about to change its position and lay it down flat on the car, when a Mr. Ross, whom we will assume was a superintendent, within the meaning of the employer's liability act (Laws 1902, p. 1748, c. 600), directed the plaintiff, who was at the time engaged in other work in the machine shop, to assist the other employés in putting the casting in a flat position on the car. While thus engaged, some of the men let go of the casting, and those (including the plaintiff) who continued to hold onto it were unable to sustain its weight, and as a result it fell flat onto the car, and plaintiff's hand was caught between it and the car, and was crushed.

The car and track upon which the casting was being carried was in perfect repair. The floor was smooth, and without any obstructions which could interfere with the handling of the flask. The room was perfectly lighted, and there was plenty of space about the car for men to work in. The task to be performed was of the simplest character. It simply consisted in changing a casting weighing 1,300 pounds, practically 6 feet long, 5 feet wide, and 8 inches deep, from an upright to a flat position on the car on which it was being carried. What was intended to be done was apparent, and was perfectly understood by all the men there engaged, and the part that each should take was equally apparent. It was simply to change the casting, weighing 1,300 pounds, from an upright to a flat position. There is no basis in the evidence for the claim or suggestion that the defendant did not furnish sufficient men to change the position of the flask as desired, if none of them had let go, and thus put extra weight upon their fellows. All the men engaged were experienced men, and were accustomed to lifting and handling heavy weights.

The plaintiff had been in defendant's employ more than 12 years. He testifies that he had never helped handle castings as heavy as the one in question in the manner in which this one was handled; but

we think it is unnecessary that he should have seen such a weight handled, in order to know what must be done in case it was handled by hand. He and his fellow workmen were only to take hold of the casting, all of them acting together, and lower it steadily and until it should rest flat on the car. It was unnecessary that the superintendent should give any instructions, because the most minute, if given, would only call attention to what was perfectly obvious and patent.

It is urged, however, that defendant was guilty of negligence, because the method adopted upon the occasion in question of putting the casting flat upon the car was unnecessarily dangerous. There is plenty of evidence to the effect that castings of that weight were usually handled by cranes that were operating in different parts of the defendant's plant, and that if a crane had been used the casting could be raised clear from the car and then placed in a flat position with greater safety to the employés, and that if such method had been employed the services of fewer men would be required. The evidence fails to point out, however, how this casting could be put through the elevator door and into the elevator, except by hand. It is nowhere suggested in the evidence that the crane could have carried the flask into, and onto the floor of, the elevator.

It appears that flasks of this character are ordinarily handled by cranes, but it seems to me that it cannot be said that a master is chargeable with negligence because he sees fit to direct his employés to change the position of a casting like the one in question by hand, rather than by the use of a crane, provided he furnishes a sufficient number of men for that purpose; and in this case, as before said, there is no basis in the evidence for a finding that a sufficient number of men to safely handle this flask were not furnished by the master, if all had done their duty. The cause of the accident is fully explained by the witness called by the plaintiff, who was assisting in the attempt to change the position of the flask:

"I had hold of the flask at the time it fell. Five men had hold of the flask, and the sixth man was hanging onto the car."

Being asked how it happened to fall, he said:

"When we was tipping that flask, it was pretty heavy, and couldn't hang onto it, and we dropped it, and, whoever could, we run away."

There is no evidence which tends to establish the proposition that the attempt to put the flask in question flat upon the car by hand was an unsafe or dangerous method, provided enough men were furnished for the purpose, and in this case it appears that there were as many men assigned to the doing of that work as could reasonably get hold of the casting. That being so, it is of no consequence that it would have been safer to have changed the position of the casting by means of a crane. A master is not required to adopt the safest and best known methods of performing his work, but only such as are reasonably safe, and as would be adopted by a person of ordinary care and prudence. If a master, engaged in erecting a building, moves practically all the beams or timbers by means of a crane, he is not chargeable with actionable negligence because he may direct his em-

ployés to move one of such beams or timbers by hand, and without the use of a crane, provided a sufficient number of employés are furnished for the work, and they are given a safe and suitable place in which to work; and if, under such circumstances, one lets go, and thereby places a greater weight upon the others than they can sustain, and injury results to one or all, the master is not liable.

We conclude in this case that the evidence wholly fails to establish actionable negligence on the part of the defendant, even when interpreted most favorably to the plaintiff, and when he is given the benefit of all the inferences which may be legitimately drawn therefrom. Having reached such conclusion upon the main issue in this case, it is unnecessary to consider the other questions presented by this appeal.

It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur, except SPRING and KRUSE, JJ., who dissent in a memorandum by KRUSE, J.

KRUSE, J. (dissenting). There was a nonsuit upon the first trial, which was set aside by the trial judge, and we affirmed. The case went back for a new trial, and a verdict was rendered for the plaintiff. The defendant's motion for a new trial was denied, and the case is here again on appeal.

The evidence is no more favorable to the defendant than it was when the case was here before. It is now proposed to reverse the judgment, and send it back for another trial, upon the ground that the evidence fails to establish actionable negligence against the defendant. I think the order setting aside the nonsuit was not a discretionary order. The effect of our affirmance was to hold, not merely that it was discretionary with the trial judge to submit the case to the jury, but that the evidence was such as to require that to be done. Of course, the question is still in the case whether the verdict is against the weight of the evidence; but it does not seem to me that the judgment should be disturbed upon that ground. So far as there is any conflict in the evidence, the jury was well warranted in finding with the plaintiff.

I am not convinced that our former decision is wrong. I think the judgment should be affirmed.