### DUKE v. AMERICAN MUSEUM OF NATURAL HISTORY.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. EVIDENCE (§ 514*)—EXPERTS—MATTER OF EXPERT KNOWLEDGE.

The proper method of lowering an exhibit weighing from 1,800 to 2,000 pounds from a vertical to a horizontal position, and the number of men requisite to handle safely, is not a matter calling for the introduction of expert testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2319–2323; Dec. Dig. § 514.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 130*)—INJURIES TO SERVANT—METHOD OF WORK—
NEGLIGENCE.

    Defendant museum, desiring to lower an exhibit from an upright to a horizontal position, endeavored to do so by man power and tackle in the same manner as other exhibits had been previously lowered without mishap, providing 28 men to do the work because the exhibit weighed from 1,800 to 2,000 pounds. It had been lowered to an angle of 35 to 45 degrees without accident, when, without warning, it suddenly skidded, and continued to do so until it passed the horses placed to receive it, and fell to the ground resulting in injury to plaintiff, who was one of the men assisting in the work. There was no proof that any of the men released their hold, and it was not disputed that a sufficient number of men had been provided, and the method used was one that had been tested and was found safe and practical by experience. *Held*, that defendant was not guilty of actionable negligence.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 264, 266, 276; Dec. Dig. § 130.*]

Appeal from Trial Term, New York County.

Action by Frank Duke against the American Museum of Natural History. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

E. Clyde Sherwood, of New York City, for appellant.

George M. Pinney, of New York City, for respondent.

DOWLING, J. Appeal from a judgment on a verdict of a jury in the sum of $12,500 for damages claimed to have been sustained by plaintiff by reason of defendant's negligence. The action is brought under the Employer's Liability Law (Consol. Laws 1909, c. 31, §§ 200–204).

On December 15, 1910, the plaintiff was employed by the defendant as a carpenter, and had been so engaged for two years and five months. On that day it was sought to change from a vertical to a horizontal position a certain exhibit consisting of a reproduction of carvings from a temple in Guatemala, then in position in the Mexican room of defendant's building. The exhibit consisted of an upright frame carrying wire mesh to which was attached the plaster cast. The wooden screen was 4 inches thick, 11 feet 1 inch high, and 1 foot in thickness at the base, which was made of mahogany. The tablet itself varied in thickness up to a maximum of 7 inches. The total weight of the exhibit was from 1,800 to 2,000 pounds. Of this, the plaster cast weighed about 1,300 pounds, and the frame from 600 or 700 pounds. In preparation for the work of lowering the screen it had been moved out upon the floor, and it had been placed upon two planks 12 to 14 feet long. Ropes had been carried from the upper part of the screen to columns north and south of the exhibit, and some three columns, or 52 feet, away. These posts were of iron, from 18 to 20 inches thick, perfectly firm and square. The flooring of the room was laid in mosaic, the tiles being about an inch square, and polished from ordinary traffic.

—————————————————————————————————————————
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John D. Foulke was administrative assistant, discharging the duties of superintendent for the defendant at the time in question, and he had charge of all the men, and was general superintendent of the buildings. John Samm was the foreman in charge of the gang of men assigned to do this work. The moving and lowering of casts and exhibits was an ordinary feature of the work of the defendant, and five of them had been lowered within a day or two preceding the one in question. The frames of all these casts were of the same size, but none of them had been as heavy as this particular one, the greatest weight theretofore lowered being 900 pounds and the lightest 10 pounds. As this exhibit had shown a tendency to sag, it was braced before the work of lowering commenced. Ordinarily the gang of men used to move these exhibits consisted of from 8 to 10 men; but in view of the unusual size of this specimen the party was increased to 28. Of these three men held the ends of the ropes, which were slackened as the cast was being lowered. These ropes were in the same direction as the base of the exhibit; that is, passing from the top over the screen and away from it. Three men supplied with poles engaged them in a notch or cornice in the upper frame of the exhibit, and two or three men were stationed with their hands against the base thereof to prevent it from slipping or from traveling too fast. The purpose of the planks beneath the exhibit was not only to save the base, but also to prevent slipping upon the tiled floor. The remaining 20 men were stationed around the exhibit, and were supposed to bear the weight thereof as it gradually was lowered. Two horses had been placed beneath the cast to receive it, and break its force as it gradually came down. These horses stood 3½ feet high. The exhibit had been lowered to an angle of from 35 to 45 degrees without incident or accident, when, without warning, it suddenly skidded, and while apparently the men did not run away, but still kept hold of it, it continued sliding to such a degree that it passed the horses placed to receive it, and fell to the ground. In its fall it struck plaintiff, who sustained severe and permanent injuries.

The plaintiff, who says he had not theretofore assisted in the lowering of any exhibits, had, however, been called upon at different times to assist in moving them. He says that at no time did he have his hand upon the frame or any part of the exhibit. In this he is contradicted by witnesses for the defenses. There is no claim, however, that he contributed in any way to the occurrence complained of, or that he was negligent in his conduct at the time. The defendant's liability has been predicated upon the theory of a failure to provide sufficient proper and safe appliances for the doing of this work. As the court charged without exception:

"The test of actionable negligence is not what might have prevented the particular accident, but what reasonably prudent and careful men would have done in the discharge of their duties under the circumstances as they existed at the time of the accident. If the danger was not one to be reasonably anticipated, it is not the duty of the defendant to provide safeguards which since the accident are suggested. The master does not guarantee the safety of his servants; he is not obliged to furnish a servant with an absolutely

safe place in which to work, nor is he obliged to furnish the best known appliances. All he is obliged to do is to furnish appliances that are reasonably fit and safe. He satisfies the requirements of the law if, in the selection of appliances, he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety if he were supplying them for his own personal use. Summing it up in a few words, it means that the master must under the circumstances do what an ordinarily prudent person would do, having due regard to the safety of his servant. So much, then, for the duties resting on the master."

The sole testimony directed to the master's liability under this charge is that of a rigger, Richard Doughty, called as an expert to testify that there was a common practice among riggers in the city of New York in the month of December, 1910, in the lowering of heavy bodies, and that that method was by the erection of a pair of gin-poles, bolted together at the head with a barrel in bearings at the bottom. To the top of these tackle is fastened, and they are then secured to the top of a column. By the use of a block and fall the weights are then lowered. On cross-examination, however, this witness admitted that, except for the skidding, this exhibit would have gone down in the proper way if there were men enough to hold it, but he undertook to say that 28 men were not sufficient to handle a body weighing 1,800 pounds.

[1] We do not think that this was a case calling for the introduction of expert testimony, for the operation was a simple and usual one, which had been repeatedly used by the defendant without accident of any kind, and the handling of a body such as the one in question is not such an operation as requires the aid of expert testimony, either to elucidate it to a jury or to inform them of the various methods by which it can be performed.

[2] The defendant produced some nine witnesses who were present when the accident occurred, and it seems plain from their testimony, as well as from that of the plaintiff's witnesses, that the method adopted for the lowering of the exhibit was such as any prudent man in the exercise of reasonable care would adopt, and that the sole cause of the accident was the skidding of the exhibit—an event which had not occurred with any previous lowering of other exhibits, and which the defendant could neither have been reasonably expected to foresee, nor is there any suggestion of any means by which that skidding could have been guarded against in the method followed for the lowering. There is no testimony of any kind in this record upon which the jury could have found that under the method pursued, which defendant had every reason to believe was a safe one, any further precaution could or should have been taken to guard against skidding.

In Ozogar v. Pierce, 134 App. Div. 800, 119 N. Y. Supp. 405, the accident had occurred while men were lowering a casting known as a "flask" upon a car. It affirmatively appeared that theretofore castings had been moved by the defendant by means of a crane, but as was said in that case:

"If a master engaged in erecting a building moves practically all the beams or timbers by means of a crane, he is not chargeable with actionable negli-

gence because he may direct his employés to move one of such beams or timbers by hand and without the use of a crane, provided a sufficient number of employés are furnished for the work, and they are given a safe and suitable place in which to work, and if, under such circumstances, one lets go, and thereby places a greater weight upon the others than they can sustain, and injury results to one or all, the master is not liable.".

In this case there is no positive proof that any of the men released their hold upon the exhibit, and thereby placed an additional stress upon the others, but it does appear beyond dispute that a sufficient number of men had been provided to handle it. The method used was one which had been tested and found safe and practical by experience, and there was nothing to suggest the need for any further precaution save that of providing more men than usual, which was done. As was said in Ryan v. Cortland Carriage Goods Co., 133 App. Div. 467, 118 N. Y. Supp. 56:

"Failure to guard against that which has never occurred and which is very unlikely to occur, and which does not naturally suggest itself to prudent men as something which should be guarded against, is not negligence."

The judgment and order appealed from will therefore be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.