## WEST LUMBER CO. v. MORRIS & BARNES. (No. 1008.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 3, 1923. Dissenting Opinion, Dec. 3, 1923.)

1. **Appeal and error** ⚖️742(1)—**Propositions need not be related to specific assignments of error.**

Court of Appeals Rule 30 does not require that proposition in appellant's brief shall show that it relates or refers to any particular assignment of error.

2. **Witnesses** ⚖️364 — **Original plaintiff's interest in suit held proper subject for cross-examination.**

Where personal injury suit by employee against lumber company was settled without the knowledge of plaintiff's attorneys, and they were allowed on that ground to intervene and prosecute the action, and the original plaintiff's testimony was highly material. if not essential, to recovery by interveners, *held* that defendant lumber company had the right, on cross-ex-

---

amination of the original plaintiff, to attempt to prove his interest or bias in that he had an interest in the amount recovered, as shown by letter written to him by the interveners.

**3. Negligence ⬤136(9)—Issue of proximate cause for jury.**

The issue of proximate cause of injury is for the jury, where reasonable minds might differ as to whether the act or omission was the proximate cause.

**4. Master and servant ⬤285(12)—Whether failure to warn of dangers was proximate cause of injury question for jury.**

Where a minor injured was not warned of the dangers of his employment, the master is not liable as matter of law unless the dangers and hazards attending such employment were so great that reasonable minds might come to no other conclusion than that the master reasonably anticipated or could have foreseen that the minor would be injured, not necessarily in the particular manner that he was injured, but in some similar way.

**5. Master and servant ⬤285(12) — Whether failure to warn inexperienced log decker was proximate cause of injury held question for jury.**

In action for injuries sustained by a log decker, an inexperienced minor, *held*, that whether defendant's failure to warn plaintiff of the dangers of the work was the proximate cause of his injuries was for the jury.

**6. Master and servant ⬤285(4)—Whether log decker's injury was mere accident held question for jury.**

In action for injuries sustained by a log decker decking logs by hand, evidence *held* to raise issue whether the injury was a result of a mere accident which could not have been foreseen or reasonably anticipated by defendant, by the use of ordinary care.

**7. Evidence ⬤222(4)—Statement by plaintiff subsequent to injury that the occurrence was a mere accident held material as bearing upon the issue of accident.**

In action by log decker for injuries sustained when decking logs by hand, a statement by plaintiff subsequent to the injury that the occurrence was a mere accident *held* material as bearing upon the issue of accident as against the contention that it was no more than a conclusion on his part.

**8. Master and servant ⬤356—Defense of assumed risk abolished by Compensation Law.**

Under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1, the defense that the injured employee assumed the risk, whether it be risk necessarily and ordinarily incident to the work being performed by the servant alone, or whether it be augmented by negligence on the part of the master or employer, is taken away from a manufacturing corporation employing more than five who has not provided compensation insurance for his employee, although subdivision 4 requires plaintiff to prove negligence of the employer.

Walker, J., dissenting in part.

Appeal from District Court, Polk County; J. L. Manry, Judge.

Action by A. D. Kinard against the West Lumber Company, in which Morris & Barnes intervened. From judgment for interveners, defendant appeals. Reversed and remanded.

Feagin & Feagin, of Livingston, and J. A. Platt, of Houston, for appellant.

Morris & Barnes, of Beaumont, in pro. per.

HIGHTOWER, C. J. This suit was originally one by A. D. Kinard against the present appellant, West Lumber Company, in the district court of Polk county, to recover damages for personal injuries sustained by Kinard as an employee of the West Lumber Company while performing his duty as what is termed a "log decker" in the woods out on appellant's tramroad where logs were being piled or decked along the track, which were afterwards to be loaded on cars and hauled to appellant's mill. Shortly after the suit was filed by Kinard, the West Lumber Company entered into a written contract of settlement with him, and took from him a receipt in full for all claim of damages because of such injuries. Kinard was represented in the suit by the law firm of Morris & Barnes, the present appellees in this case, and they knew nothing about the negotiations for settlement between the West Lumber Company and Kinard until after it had been made. Upon learning of the settlement made with Kinard, Morris & Barnes filed a petition of intervention in the suit, alleging, in substance, that they were Kinard's lawyers in conducting the litigation, and that they had a written assignment from him of a one-half interest in his cause of action against the West Lumber Company, and that the West Lumber Company had both constructive and actual notice of such assignment to them at the time it settled the suit with Kinard, and they prayed to be permitted to prosecute their intervention to judgment, based upon their assignment as to one-half of Kinard's cause of action to them.

Interveners alleged, substantially, that Kinard received his injuries on June 17, 1921, while in the discharge of his duties as log decker for the West Lumber Company, and that his employment in that capacity was attended by great danger and hazard, and that Kinard, at the time he was employed and at the time of his injuries, was a minor, under 21 years of age, and had had no previous experience in decking logs, and was not aware of the danger attendant upon such work, and that the West Lumber Company, his employer, had negligently failed to warn him of such dangers and to instruct him how to avoid them, and

that, in consequence of such negligent acts and conduct on the part of the West Lumber Company, Kinard sustained his injuries, and was damaged in the sum of $20,000. Interveners further alleged, as a ground of negligence on the part of the West Lumber Company, in substance, that at the time Kinard received his injuries, West Lumber Company's foreman in charge of the work Kinard was doing forced and compelled him to deck a log with his hands, instead of permitting him to use a hook and chain for that purpose, which, they alleged, was the usual and customary way of decking logs, and that, in consequence of such act on the part of the foreman, in compelling Kinard to deck the log with his hands, Kinard received his injuries, and that this was the result of negligence on the part of the foreman in compelling Kinard to deck the log with his hands. Intervener prayed for judgment against the West Lumber Company for $10,000, being one-half of the damages suffered by Kinard in consequence of his injuries.

The West Lumber Company answered by general demurrer, a number of special exceptions, the action on none of which is material here, by general denial, and by special denial of all the acts of negligence alleged against it, and further specially interposing the defense of assumed risk, and, further, that Kinard's injuries were the result of a mere accident. West Lumber Company further pleaded specially its settlement with Kinard, and prayed to have that upheld as a defense to the suit of interveners.

In reply to the answer of the West Lumber Company, interveners filed a supplemental petition, containing, among other things, a special exception, attacking the plea of settlement interposed by defendant, and this special exception was sustained, and defendant's answer, to that extent, was stricken out. Further on in the supplemental petition, interveners alleged, in substance, that the injury to Kinard was caused solely and only by negligence on the part of West Lumber Company's foreman in ordering and compelling Kinard to deck the log with his hands.

The case proceeded to trial with a jury, and resulted in a verdict and judgment in favor of interveners, against the West Lumber Company, for $5,000, from which the West Lumber Company has appealed, assigning a number of errors, some of which we are compelled to sustain, and others will be overruled.

[1] The first eight propositions advanced by appellant in its brief do not show, of themselves, that they relate to any particular assignment of error in the brief, and for this reason appellees have filed a motion in this court to strike these propositions from appellant's brief. Appellees contend, in this connection, that under the present rules for briefing, the propositions in appellant's brief must refer to, and show that they refer and are related to, some particular assignment of error in the brief, before they will be entitled to consideration by this court. In support of this contention, appellees have cited several opinions of some of the Courts of Civil Appeals in this state which sustain this contention, especially the case of Blakeney v. Johnson County, 253 S. W. 333, an opinion by the San Antonio Court, speaking through Chief Justice Fly. It is very clear from the opinion in that case that the court there held that unless a proposition in appellant's brief referred to some particular assignment of error upon which it is based, it is not entitled to consideration by the appellate court. We were already aware of this holding by the San Antonio court; but as we construe the present rules promulgated by the Supreme Court, they do not require that any proposition in a brief shall show that it relates or refers to any particular assignment of error, and we have been unable to agree with the holding of the San Antonio court in the case above mentioned. Rule 30, as promulgated by the Supreme Court, only requires that propositions found in the brief be germane to one or more of the assignments of error, or relate to fundamental error. True, it would be much more convenient and tend to the dispatch of business by the appellate courts if counsel would let their propositions show to what assignments of error they relate; but the Supreme Court, in making the rule, has not required that that be done. This court has heretofore held, in Adams v. Adams, 253 S. W. 605, that rule 30 does not require that a proposition in appellant's brief shall show to what assignment or assignments of error it relates, and we have seen no reason to change our views on that point. The motion is, therefore, overruled.

Before we proceed to a disposition of any of the points insisted upon by appellant in this case, we shall first state the substance of what we consider the undisputed evidence in this case, and this will serve as a statement for such evidence in connection with any of the assignments discussed by us.

Kinard received his injuries, made the basis of this suit, on June 17, 1921, while in the employ of appellant out on its tramroad in the woods in Polk county, decking sawlogs. He had been working in that particular business about 1¾ days at the time he was hurt, and he had never worked as a log decker prior to that time. Kinard was a minor at the time—to be exact, he was 20 years, 1 month, and 14 days of age—and he testified as a witness on the trial that he had had no previous experience in decking logs, and that he had not been warned by

appellant or any of its agents or employees of any of the dangers attendant upon such work, and that he, in fact, was unaware of such dangers, and knew not how to avoid them.

It is well here to show, briefly and in substance, the nature of the work that Kinard was doing at the time he was injured. The crew engaged in gathering logs to be decked along the track consisted of five men, one of whom was Kinard. A machine known as a skidder machine, or steam skidder, was used as the power for pulling the logs from the woods and brush near the track, from where they lay in the woods, up to the point where it was desired to pile them along the track. In connection with this steam skidder, there was a drum, around which was wound a heavy and long wire cable, and one of the crew would take the end of this cable and go out in the brush, where the logs were, and fasten it to a log, and the man operating the steam skidder would then operate the engine, and drag the log, by means of the cable wrapping around the drum, up to the track, where the logs were to be decked, and a pile of logs would be started as fast as the logs were dragged in, parallel with and in close proximity to the track. Kinard was the decker on this occasion, and commenced building the pile of logs as fast as they were dragged in by means of the cable, and, as we have shown, he had been doing this the day before he was injured and up to about 3 o'clock on the day of the injury. In connection with the logs, a hook and chain was used by the decker, unless a log, in pulling upon the pile, became balanced across the pile, in which event the log was called a "floater," and the undisputed evidence shows, as we gather it from the record, that when such a log came on the deck and balanced, which was usually a light log and never a very heavy and long log, it was customary to deck such balance log by means of the hands. The undisputed evidence is, as we see it, that this was done because it was the easiest, quickest, and safest way to deck a balanced log. The height of the pile of logs depends upon the number of logs that are pulled from any particular quarter to the track, some of the witnesses saying that these piles range from 7 to 10 feet in height; that is, a completed deck of logs ranges from 7 to 10 feet high, and slopes at an angle of about 45 degrees.

Kinard himself testified that sometimes logs were decked as high as 12 or 14 feet; but, if we remember correctly his testimony in this record, the pile or deck of logs on which he was injured was about 10 feet in height. Kinard testified on the trial that on the occasion of his injury, a log had been pulled in by the cable, which he says was about 12 inches in diameter and about 32 feet long, and that this log balanced upon the deck, which was about 10 feet high, and that he was ordered by one of appellant's foreman in charge of the work to proceed to deck the log with his hands, instead of using a hook and chain, and that he proceeded to obey this order by taking hold of the log at one end, but was not successful in properly decking it from that end, and was roughly commanded by appellant's foreman to go to the other end and take hold of the log and proceed to deck it, which he says he did, and that in the attempt to deck the log with his hands under such order, he lost his balance and turned a "flip" over the log that he was pushing with his hands, and fell down the deck near the track, and the log overtook him and broke his right leg between the ankle and knee.

There were some three or four witnesses in the case who testified that the usual, customary, and easiest, and safest way to deck a balanced log, such as the one that injured Kinard, was to do so by means of the hands, and not to use the hook and chain, giving their reasons why this was so. There was no dispute in the testimony on that point. It is apparent from the evidence as a whole that the business of decking logs is attended with danger, and that a person so engaged must be on the lookout for his protection and for the protection of fellow employees; but there is nothing, as we consider this record as a whole, that indicates that the work of a log decker is attended with much greater danger or hazard than any other part of the work of getting the logs to the track. The undisputed testimony further shows that while Kinard had never worked as a log decker prior to his injuries, longer than we have stated above, nevertheless, he had been around and about the work, and had seen it going on, in passing by where logs were being decked, on a number of occasions prior to the time of his injury. He had been employed by the West Lumber Company in the capacity of water carrier and hauler of wood and perhaps other light jobs for several years prior to his injury, but, as we have stated, never actually before that time handled logs on the deck.

The court submitted for the jury's answer in this case two special issues, the first being as follows:

"Was the West Lumber Company guilty of negligence in employing and allowing A. D. Kinard to work as a decker under the facts and circumstances obtaining in this case?"

The second special issue was:

"Did the defendant, West Lumber Company, or its agent or agents, warn the minor, A. D. Kinard, of the nature and extent of the dangers incident to his employment as decker, if you find said employment was dangerous, and them warn him how to avoid same?"

To the first question the jury answered, "Yes," and to the second question the jury answered, "No."

We shall now take up such of appellant's propositions as we consider present error in this case for which the judgment must be reversed.

[2] Under its sixth proposition, it is appellant's contention that the trial court committed reversible error in refusing to permit appellant to prove by Kinard, while he was a witness on the stand in behalf of appellees, that he expected to share in the recovery, if any, by interveners in this case, at least in part. In connection with this matter, we can do no better than set out here in full appellant's bill of exceptions to the action of the trial court on this point:

"Be it remembered that upon the trial of the above entitled and numbered cause, while the witness A. D. Kinard was on the stand and testifying as a witness for interveners, the defendant's attorneys asked him the following question: 'What interest have you in this case?' To which question the intervener objected, because the pleadings disclosed that he (the witness Kinard) was not a party before the court, and the question was irrelevant and immaterial; which objections were by the court sustained, and said witness was not permitted to answer said question. That if said witness had been permitted to answer said question he would have answered that he expected to receive an interest in whatever was recovered by the interveners in this suit; that he then had in his possession a letter written by the interveners, Morris & Barnes, agreeing that if he would be present at the trial and assist in securing the proper witnesses and proper testimony, they would share with him in any recovery made by them more than one-half of what he (Kinard) had already received.

"The defendant's attorneys stated to the court that such question and the answer thereto was intended to test the credibility of the witness and show his interest in the case as affecting the weight of his testimony; but said witness was not permitted to answer said question and testify as above set out.

"To which action of the court the defendant by its attorneys then and there in open court excepted, and here now tender their bill of exception No. 3, and asked that the same be allowed and made a part of the record herein."

This bill is approved by the trial judge, and we have no doubt that the trial court's action in refusing to permit appellant to make the proof which the bill shows he expected to make by Kinard was reversible error in this case. Unquestionably, Kinard's evidence in this case was highly material to a recovery by interveners—in fact, the most material in the case in behalf of interveners —and we seriously doubt whether in the absence of his evidence there would be sufficient in this record to warrant a recovery by appellees. This being true, appellant had the right, on cross-examination of Kinard, to show any fact or facts that would, in the opinion of the jury in this case, cause him to lean or be biased and give favorable testimony in behalf of interveners, and the court could not properly take that matter away from the jury, as he did, by rejecting this tendered testimony. No useful purpose would be subserved in attempting to discuss this point at any length, because it is elementary that the bias, prejudice, motives, etc., of a witness in any case is always a proper subject of inquiry. Evansich v. Railway Co., 61 Tex. 27; H. E. & W. T. Ry. Co. v. Wilson, 37 Tex. Civ. App. 405, 84 S. W. 274; Payne v. Bannon (Tex. Civ. App.) 238 S. W. 706; Cox v. M., K. & T. Ry. Co., 20 Tex. Civ. App. 250, 48 S. W. 745. For this error on the part of the trial court, the judgment must be reversed.

This would suffice to dispose of the present appeal; but, in view of the probability of another trial, it is the duty of this court to dispose specifically of some of the other contentions made by appellant.

[3] The court's charge to the jury in this case contained no question or issue calling for a finding by the jury as to whether either of the acts of negligence submitted for their consideration became a proximate cause of Kinard's injuries, and appellant excepted to the charge for that reason. The exception was overruled, and thereupon counsel for appellant prepared and requested a special issue, which was in proper form and correct in substance, calling for a finding by the jury as to whether both or either of the acts of negligence as submitted by the charge was a proximate cause of the injury to Kinard, and the court refused to submit this special issue. We have no doubt that this action of the court was erroneous. The issue of proximate cause in a suit for personal injuries claimed to have been negligently inflicted is usually one of fact for the jury's determination, and it is seldom that that issue can be properly and safely taken from the jury's consideration and decided by the trial court as a matter of law. In any case where reasonable minds might differ in determining whether a given act or omission became a proximate cause of an injury in a case of this character, the issue, as one of fact, must go to the jury, and cannot be decided as one of law by the court. In connection with the requested special issue, appellant tendered a full and correct definition of the term "proximate cause," and such issue should have been submitted by the trial court for the jury's consideration and determination. We shall not enter into a discussion at greater length of what constitutes proximate cause. True, the evidence in this case shows, as we have stated, that Kinard, at the time he was employed and injured, was not 21 years of age, and the jury found that he had not been warned of the dangers attendant upon his employment; but it does not show, as a matter of law

that the injury to him, or any similar one, must necessarily have been reasonably anticipated or foreseen at the time of his employment, or at the time he was ordered to deck the log with his hands. There is not a particle of evidence in this record that any person, adult or minor, was ever before injured as Kinard was on this occasion, and there is evidence in the record that minors had theretofore done the same work for appellant that Kinard was doing when he received his injuries.

[4, 5] It is true, as a general rule, that a master or employer, before putting an inexperienced minor at a dangerous and hazardous employment, must warn the minor of such dangers and hazards as attend the work, and must further admonish and inform him how to protect himself against such dangers, and if he'fails to do this, and if the jury determines that such failure on the part of the employer or master was the cause of such injury, the master must then respond in damages; but it will not do to hold that where a minor is injured while performing the duties of his employment, and was not warned of the dangers, if any, the master is responsible or liable as a matter of law for such injuries. To so hold, the facts of the case must make it certain that the dangers and hazards attending such employment were so great that · reasonable minds might come to no other conclusion than that the master reasonably anticipated, or could have foreseen, that the minor would be injured, not necessarily in the particular manner as he was injured, but in some similar way. The facts in this case do not compel such a finding, and therefore we hold that the issue of proximate cause was one for the jury. T. & P. Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 163; Railway Co. v. Smithers (Tex. Civ. App.) 228 S. W. 644; Railway Co. v. Eaton (Tex. Civ. App.) 222 S. W. 319; Collins v. Railway Co., 110 Tex. 577, 212 S. W. 479, 222 S. W. 156; Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Dawson v. King et al. (Tex. Com. App.) 222 S. W. 164; Price v. Yellow Pine Paper Mill Company (Tex. Civ. App.) 240 S. W. 588.

[6] As we have above shown, one of appellant's defensive pleas in this case was that the injury to Kinard was the result of a mere accident, which could not have been foreseen or reasonably anticipated by appellant, by the use of ordinary care on its part. Upon the trial, in keeping with this pleaded defense, appellant requested the trial court to submit this defense by a special issue, in the following form:

"Was or not the injury which A. D. Kinard sustained the result of a mere accident, which could not be foreseen or anticipated by the defendant by the use of ordinary care?"

The court refused to submit this requested issue, and its action in that connection is assigned here as error. Upon the facts of this case, we have reached the conclusion that the court was in error in declining to submit this issue. In addition to the general statement that we have already made, showing the undisputed facts in this case, we make this further statement, in connection with appellant's contention that the injury received by Kinard was the result of a mere accident. One of the witnesses who testified on this point was West Phillips. His testimony in this particular connection was as follows:

"I remember the day the Kinard boy got hurt, as I was drum puller that day. He was decking at the time. I disremember how long he had been decking there, but it was one or two days. I forget which it was. I remember the log that hurt him, and I know something about that log that came in there. I guess that log was about five or six inches in diameter, something like that, and it was broken in two; it was a 32-foot log, and I broke it something near half in two when I pulled it in.

"I will explain how it came upon the deck and what happened there. I just pulled it right upon the deck; it balanced up there, a floater. I says, 'Blackie (meaning Kinard), there is you a floater, you can deck it with your hand,' and he got hold of the end of it and started to deck it around, and the best I could see it looked to me like he stumbled in front of the log and went off running in front of the deck, and it overtaken him and threw him down and fell on his leg."

Again, on cross-examination, the same witness testified:

"I saw him fall; the way he fell was he was pushing the log around and stumbled. They are not liable to stumble any time if they push a log when they back away from it. He did stumble and fall and that log rolled on him."

Another witness, Albert Moore, Kinard's brother-in-law, testified on this point as follows:

"I talked with the boy afterwards about how this occurred. He stayed at my home. I believe, the best I recollect, me and the boy was talking about it. He says, 'It was just a mere accident, as near as he could account for it.'"

We have concluded that this evidence, in connection with what we have already shown, was sufficient to raise the issue for the determination of the jury as to whether Kinard's injuries were the result of a mere accident, as pleaded by appellant.

In R. C. L. vol. 20, near bottom of page 19, the author, after devoting some space to the distinction between injuries caused by actionable negligence and those caused by mere accident, has this to say:

"The law, however, has fixed upon a standard for determining whether an act is negligent and actionable or an accident, and without legal re-

dress, and that standard is the conduct of the average prudent man. If the injury resulting from the act could have been foreseen by a prudent person, the perpetrator will be held accountable therefor; the case is not one of accident. And conversely, if the injury could not have been foreseen it is to be attributed, not to the actor, but to accident. Accident, then, is an occurrence that could not have been foreseen."

In Trinity County Lumber Co. v. Denham, 85 Tex. 56, 19 S. W. 1012, where the defense of accident was interposed by the defendant, among other things, paragraph 2 of the syllabus states the rule as to that defense as follows:

"An accident that cannot be reasonably anticipated by either of the parties concerned in it, and that occurs without fault of the person charged with it, is not actionable. The mere fact that an accident happens or an injury occurs is not of itself. [conclusive] proof of negligence."

In Ebersole v. Sapp, 208 S. W. 156, our Commission of Appeals used this language:

"The master is not an insurer of the safety of the servant, but is bound only to the exercise of ordinary care. He is not required to provide against, and is not held liable for, the results of a mere accident. Whether an act is negligent and actionable or accidental and without, legal redress is to be determined by the standard of conduct of the ordinarily prudent person in the exercise of reasonable care. If the injury resulting from the act could have been reasonably anticipated or foreseen by an ordinarily prudent person, in the exercise of ordinary care, the occurrence is not accidental. If, however, the injury could not have been thus foreseen or anticipated, it is an accident for which there is no legal redress."

[7] As stated near the beginning of this opinion, the proof is practically without dispute that in decking a balanced log or "floater," as the witnesses call them, it has always been usual and customary for the decker to use his hands, instead of a chain and hook, because, as the witnesses all say, it is the easiest, must convenient and safest way to deck such a log. As we have above shown, there is no suggestion in this record that such an injury as was received by Kinard, or any similar one, or one of any character, was ever sustained by a decker, adult or minor, and some of these witnesses testify that they had been observing the decking of logs and engaged in the business for a period of time ranging from four to eight years. Then, when we consider the testimony of West Phillips, as we have above quoted it, that it occurred to him that Kinard stumbled and lost his balance and was, therefore, precipitated over the log and was injured, it cannot be said, as a matter of law, that the issue of accident, as pleaded by appellant, was not in this case. And, when we consider further the testimony of Albert Moore, Kinard's brother-in-law, which is, substantially, that Kinard told him, after the accident, that the occurrence was a mere accident, we do not believe that the court can safely decline to submit the issue of accident for the jury's consideration. True, it might be properly contended that Kinard's statement to his brother-in-law, if he made it, that the occurrence was a mere accident, was no more than a conclusion on his part, and therefore not binding on him at all; but in connection with the other facts in this case, we think that it is material to be considered as bearing upon the issue of accident.

[8] Appellant has advanced several propositions in its brief by which it is contended that the trial court was in error in declining to submit for the jury's consideration and determination their pleaded issue of assumed risk on the part of Kinard. The undisputed testimony shows that the appellant in this case, West Lumber Company, is a corporation engaged in the manufacture of lumber, etc., and that it employs more than five employees in connection with its business; in short, that the West Lumber Company is a concern permitted to carry workmen's compensation insurance, under the statute of our state. This being so, we have concluded, without undertaking to here discuss the question at length, that the defense of assumed risk, as here interposed by appellant, is not available to it; it not having availed itself of carrying employers' liability insurance, as it might have done under our statute. That act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), in the respects here in question, is as follows:

"Article 5246—1. In an action to recover damages for personal injuries sustained by the employee in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense:

"1. That the employee was guilty of contributory negligence.

"2. That the injury was caused by the negligence of a fellow employee.

"3. That the employee had assumed the risk of injury incident to his employment; but such employer may defend in such action on the ground that the injury was caused by the willful intention of the employee to bring about the injury, or was so caused while the employee was in a state of intoxication.

"4. Provided, however, that in all such actions against an employer who is not a subscriber, as defined hereinafter in this act, it shall be necessary to a recovery for the plaintiff to prove negligence of such employer or some agent or servant of such employer acting within the general scope of his employment."

Thus, it appears that by the very express language of the statute the defense of assumed risk, regardless of whether it be a risk necessarily and ordinarily incident to the work being performed by the servant

alone, or whether it be augmented by negligence on the part of the master or employer, is completely taken away from the employer who has not provided compensation insurance for his employee. True, by section 4, above quoted, it is required, in order to a recovery by the plaintiff in such a case, that proof of negligence on the part of the employer be established, and it might seem that since this is required, the defense of assumed risk, that is, such risks as are necessarily incident to and arise out of the very work itself and not augmented or added to by any dereliction of duty on the part of the employer, would still remain available as a defense. We have given this question most careful consideration, but have reached the conclusion that the Legislature meant just what it said; that is, that the employer in the attitude of appellant here cannot defeat recovery by his injured employee by interposing the once available defense of assumed risk. This court has never heretofore been called on to pass upon this precise point, nor has any other court in Texas, so far as we are aware. The nearest that we came to the question was in the case of Eastern Texas Electric Co. v. Woods, 230 S. W. 498. The precise question was not there discussed, but it may be considered that we there held, in substance, what we now announce on the point.

All other assignments of error and propositions pertaining to same advanced by appellant have had our consideration, but we have concluded that none of them present error, and they are overruled.

For the errors discussed in the foregoing opinion, the judgment must be reversed, and the cause remanded.

WALKER, J. (dissenting). I concur with my brethren in their disposition of this case, and in all their conclusions except the construction of article 5246—1, Revised Civil Statutes (Vernon's Ann. Civ. St. Supp. 1918), in its relation to the defense of assumed risk. Appellant's fourteenth proposition is as follows:

"Regardless of the Workmen's Compensation Law, an employee assumes those risks which are inherent in the work being done, which cannot be eliminated and which exist after the master has exercised ordinary care with reference thereto for the safety of the servant."

This proposition is based upon the court's refusal to submit to the jury the following special issue:

"Were the dangers or risks, if any, connected with the work A. D. Kinard was doing at the time of his injury as a decker such risks or dangers as are ordinarily incident to that kind of work?"

"You will answer this question, 'Yes,' or, 'No,' as you may find the facts to be.

"And in this connection you are charged that the risks or dangers ordinarily incident to the employment are such risks or dangers as in the very nature of the thing being done attend the work after the master had exercised ordinary care with reference to the safety of the employee doing the work. And if you find from the evidence that the risks or dangers, if any, which the said A. D. Kinard was subjected to in doing the work he was doing, were such dangers or risks as were inherent in the work itself, then you will answer this question, 'Yes.'"

As I understand the facts of this case—and my brethren do not assert to the contrary—this requested issue was raised by the evidence. It follows then that the refusal of the issue can be justified only on the proposition that the quoted article has abolished the defense involved in this issue, and that appellant is liable if Kinard was injured in the course of his employment, independent of and without relation to negligence on its part. As I construe the opinion in this case, that is the position now taken by the majority of this court. They say:

"Thus, it appears that by the very express language of the statute the defense of assumed risk, regardless of whether it be a risk necessarily and ordinarily incident to the work being performed by the servant alone, or whether it be augmented by negligence on the part of the master or employer, is completely taken away from the employer who has not provided compensation insurance for his employee."

The law of negligence draws a clear distinction between the assumption by the servant of the risks incident to the master's negligence, and those risks incident to his employment, often referred to as "contractual assumption of risk." This distinction is fully discussed in the note to Scheurer v. Banner Rubber Co., 28 L. R. A. (N. S.) 1218. It is also recognized and discussed in the following decisions of this state: Freeman v. Fuller, 60 Tex. Civ. App. 242, 127 S. W. 1194; Taylor v. White (Tex. Civ. App.) 156 S. W. 349; Brown Cracker & Candy Co. v. Johnson (Tex. Civ. App.) 154 S. W. 684; Alamo Dressed Beef Co. v. Yeargan, 58 Tex. Civ. App. 92, 123 S. W. 721. In my judgment, the "assumed risk" which this article abolished as a defense is that risk created by the negligence of the master, and not that risk which is, in its very nature, incident to the duties which the servant has contracted to perform and which exist after the master has performed fully and completely all his legal duties to the servant. The latter defense was, prior to the enactment of our Workmen's Compensation Act, available to the master under his general denial, and a finding in his favor on that issue was an absolute negation of negligence on his part. It would seem that the master has met the servant's case, even under our Workmen's Compensation Act, when he has a finding that the risk causing the injury was incident to the employment, and a further finding that he was not negligent in re-

lation thereto, because section 4 of the cited article distinctly says:

"It shall be necessary to a recovery for the plaintiff to prove negligence of such employer," etc.

· If this is a sound legal proposition, of course the court committed error by refusing the requested issue. From the reported cases, it appears that Massachusetts, Iowa, and West Virginia have in their Workmen's Compensation Acts substantially the same provisions as contained in our article as cited in the majority opinion. My dissent is based primarily on the construction given this language by the Supreme Courts of those states.

In Ashton v. Railway Co., 222 Mass. 65, 109 N. E. 820, L. R. A. 1916B, 1281, it is said:

"It is well settled that where one is employed to perform manifestly dangerous work, there is no liability where the risks growing out of the work are assumed by the laborer by his contract of employment. The record shows that the defendant, at the time of the accident, was not a subscriber under the workmen's compensation act. (Stat. 1911, chap. 751), and while the act (pt. 1, § 1) provides that in an action to recover damages for personal injury sustained by an employee in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense that the employee had assumed the risk of the injury; still the removal of such defense has no application to a case of this kind, where the evidence shows that the deceased assumed the risk by virtue of his contract of employment. Ordinarily where·one enters the service of another as employee, he agrees to assume all the open and obvious risks of the business. This usually is called a contractual assumption of .risk.

"There is another class of cases where an employee suffers an injury by reason of the negligence of his employer in reference to some matter outside the risks assumed under his contract of employment, as, for instance, the failure of the employer to furnish safe and suitable tools and appliances for the employee. In such cases there may be evidence of negligence of the employer. The question often is whether the employee is precluded from recovery on the ground that he assumed the risk. If the evidence shows that by his conduct there was such an assumption of risk, he is not entitled to recover. This is called a voluntary assumption of the risk. It is a matter of defense to be pleaded and proved affirmatively by a defendant if he would avoid the consequences of his negligence, and in order to maintain such a defense it must appear that the plaintiff knew and fully appreciated the risk.

· "The doctrine of contractual assumption of risk, that is, that the risk was one of the dangers incident to the employment, is not an affirmative defense, but stands upon an entirely different footing. With reference to risks and dangers covered by the contract, the employer owes the employee no duty, and so cannot be held guilty of negligence. Murch v. Thomas Wilson's Sons & Co., 168 Mass. 408, 47 N. E. 11, 2 Am. Neg. Rep. 710; Gleason v. Smith, 172 Mass. 51, 51 N. E. 460. As the contractual assumption of risk is not a matter of affirmative defense and can be shown under a general denial, it is not affected by that part.of the workmen's compensation act (Stat. 1911, chap. 751, § 1) above referred to."

I cite the following note given by L. R. A. under this case:

"The constitutionality, construction, and effect of workmen's compensation acts are treated at length in the annotation in L. R. A. 1916A, 23, and see particularly page 220 of that annotation, as to the exclusion of the defense of assumption of risk.

"In view of some criticisms that have been directed against the decision in Ashton v. Boston & M. R. Co., excluding 'contractual assumption of risk' from the operation of the provision of the workmen's compensation act, depriving an employer who elects not to come under the act of the right to rely on assumption of risk as a defense, it may be noted here that such decision was necessary to preserve to the employer any substantial right of election. A contrary decision would, in effect, have made the act compulsory, since it would have rendered the employer liable irrespective of negligence on his part, even though he elected not to come under the act. 'Contractual assumption of risk,' in the sense in which that phrase is employed by the court in.this case, imports nothing more than the common-law rule which makes the master's liability dependent upon negligence, and exonerates him from liability for accidents from these risks incident to the business which remain after the exercise of due care on his part. It is entirely different from the assumption of risk which arises from the employee's knowledge of the danger, and which at common law is available to the employer as an affirmative defense even where he has been negligent. Obviously, if the right of election not to come under the act is to be of any substantial benefit to the employer, the denial of his right to rely on assumption of risk as a defense must be confined to assumption of risk in the latter sense. For a full discussion of the distinction, see annotation to Scheurer v. Banner Rubber Co., 28 L. R. A. (N. S.) 1218."

In De Francesco v. Piney Mining Co., 76 W. Va. 756, 86 S. E. 777, it is said:

"Neither the statute nor the common law requires a master to instruct the servant as to dangers of which he has knowledge or as to means of avoidance fully known to him. The statutory requirement proceeds upon the theory of lack of knowledge in the employé, for it applies only to inexperienced miners. The common law imposes no duty to instruct a servant of full age and average intelligence, as to elements of danger that are obvious to persons of his class. Stuart v. West End Street Ry. Co., 163 Mass. 391, 40 N. E. 180; Brands v. St. Louis Car. Co. 213 Mo. 698, 18 L. R. A. (N. S.) 701; Holland v. Tennessee Coal & Iron Co., 91 Ala. 444, 8 South. 524, 12 L. R. A. 232; Wagner v. Chemical Co., 147 Pa. 475, 23 Atl. 772, 30 Am. St. Rep. 745; Ozogar v. Pierce Mfg. Co., 134 App. Div. 800, 119 N. Y. Supp. 405. In other words, the employer is under no duty to instruct as to acts and things commonly known to be dangerous.

"To exact such a duty, under the statute abrogating assumption of risk and contributory negligence, would be violative of the letter and spirit of that portion thereof which imposes liability only for negligence or other wrongful act causing injury. It would make the employer a guarantor of the safety of the employé, from the consequences of his own careless act. Moreover, it would make the liability depend, not upon the words of the statute, but upon a rule superadded by judicial construction. The abolition of the doctrine of assumption of risk goes only to that portion of it which denies right of recovery for negligence on the part of the master, to which the servant is deemed to have assented, because of his knowledge of the same and continuance in the service thereafter. It was not the purpose of the statute to proscribe acts on the part of the master which, by the common law, were rightful and free from negligence, but only to eliminate an application of the principle of waiver—assumption of risk of injury by known acts of negligence on the part of the master. 'An employer who has not elected to bring himself within the provisions of the Michigan Workmen's Compensation Act is not answerable for injury sustained by an employé, in the absence of some negligence on the part of the former.' Lydman v. De Haas (Mich.) 151 N. W. 718, in 8 N. C. C. A. 649."

See, also, Hunter v. Colfax, etc., 175 Iowa, 245, 154 N. W. 1037, 1045, 157 N. W. 145, L. R. A. 1917D, 15, Ann. Cas. 1917E, 803.

Advance article C. J. on "Workmen's Compensation Acts," § 159, p. 137, on a review of the authorities announces the following rule, which in my judgment should control this case:

"In the few cases in which the question has been specifically considered, the prevailing opinion is that the elimination of the defense of assumption of risk does not take away the defense of absence of negligence, but refers to what is sometimes designated as voluntary, as distinguished from contractual assumption of risk, and this view is inferentially supported by the numerous authorities holding that to warrant a recovery by the employé the employer's negligence must be shown."

From what I have said, it follows that in my judgment the trial court committed error in refusing appellant's requested issue, and that my brethren are in error in overruling appellant's fourteenth proposition.